**Deanna WALTERS, Plaintiff,**

v.

**FIDELITY MORTGAGE OF CALIFORNIA, Inc.; Cal–Western Reconveyance Corp; James York; Ocwen Loan Servicing, LLC; HSBC Bank U.S.A., N.A.; and Does 1 Through 50, Inclusive, Defendants.**

**Civ. No. S–09–3317 FCD/KJM.**

United States District Court, E.D. California.

Aug. 4, 2010.

Andrew Peter Rausch, Jr., Law Offices of A. Peter Rausch, Jr., Lodi, CA, for Plaintiff.

Eric Ray Garner, Thomas Blaine Sheridan, Wagner Kirkman Blaine Klomparens & Youmans LLP, Mather, CA, Lukasz Iwo Wozniak, Houser & Allison, APC, Irvine, CA, for Defendants.

## MEMORANDUM AND ORDER

FRANK C. DAMRELL, JR., District Judge.

This matter is before the court on motions by defendants Ocwen Loan Servicing, LLC ("Ocwen") and HSBC Bank U.S.A., N.A. ("HSBC") (collectively, "defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), to dismiss and to strike certain claims alleged in plaintiff Deanna Walters' ("plaintiff") second amended complaint ("SAC"). In conjunction with their motion to dismiss, defendants request that the court take judicial notice of eight exhibits. Plaintiff opposes defendants' motions. For the reasons set forth below,[1] defendants' motion to dismiss is GRANTED in part and DENIED in part, and their motion to strike is DENIED.

## BACKGROUND

Plaintiff's claims arise out of conduct related to a residential mortgage loan transaction. (SAC, filed May 6, 2010, ¶ 10.)[2] On or around October 22, 2004, plaintiff obtained a loan in the amount of $159,000 from Fidelity Mortgage of California, Inc. ("Fidelity") on property located at 3602 Portage Circle South, Stockton, California (the "Property"). (*Id.* ¶¶ 10–12.) The loan was evidenced by a written

---

1. Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. E.D. Cal. L.R. 230(g).

2. The facts herein are drawn from the allegations in the SAC and are deemed to be true for the purposes of this motion.

promissory note and secured by a deed of trust, which named Cal–Western ReConveyance Corp. ("Cal–Western") as trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fidelity and beneficiary. (*Id.* ¶ 11–12.)

After the closing of the loan transaction, the servicing rights to plaintiff's loan were transferred to Ocwen. (*Id.* ¶ 14.) Plaintiff alleges that Ocwen acted as an agent of Fidelity, or alternatively, that Ocwen directly assumed by assignment or transfer all of Fidelity's rights and obligations under the promissory note and deed of trust. (*Id.* ¶ 15.) From December 2004 through January 2009, plaintiff dealt only with Ocwen in connection with the promissory note and deed of trust. (*Id.* ¶ 17.) Plaintiff asserts that Ocwen acted "on its own behalf, without advising her or suggesting in any way that it was acting as an agent for any other party or entity." (*Id.*)

Plaintiff alleges that after Ocwen acquired rights in or began servicing the loan, it began to engage in a pattern of unlawful and fraudulent conduct. (*Id.* ¶ 21.) Plaintiff claims, *inter alia*, that Ocwen (1) failed to credit and misapplied timely payments; (2) failed to provide timely or clear payment information; (3) prematurely referred plaintiff's loan to collections; (4) increased monthly payment amounts and added costs, fees, and interest charges in violation of the terms of the original mortgage note; (5) charged plaintiff's account for hazard insurance for the Property when it was already insured; and (6) inaccurately claimed plaintiff was in default and threatened foreclosure when plaintiff was not in default. (*Id.*)

Plaintiff alleges that from January 2005 through January 2009, Ocwen mailed her "monthly statements, reminder notices, past due notices, notices of default and other written communications, as well as communications via the internet and through electronic mail and by telephone that were materially false and misleading and known by Ocwen to be false." (*Id.* ¶ 22.)

On December 28, 2004, plaintiff paid a monthly installment on her loan that was due on January 1, 2005, but Ocwen failed to apply the payment correctly and instead applied it to a payment due December 1, 2004 that plaintiff had already paid. (*Id.* ¶ 26.) On or about January 21, 2005, Ocwen sent plaintiff a notice stating that her current payment had not been received and was past due. (*Id.* ¶ 28.) Ocwen listed late charges of $77.72 in monthly statements mailed to plaintiff for the months of January, February, and March 2005, when it knew or should have known that plaintiff's payments had not been late. (*Id.*) Plaintiff states that in "virtually every written monthly account statement" that Ocwen sent her between 2005 and 2007, Ocwen falsely claimed that plaintiff owed additional late fees, even though her payments were not late. (*Id.* ¶ 38.)

On or around January 1, 2005, Ocwen falsely claimed in a written notice mailed to plaintiff that it had not received proof of hazard insurance on the Property, despite the fact that Ocwen was or should have been aware that the premium for the insurance had been paid in October 2004. (*Id.* ¶ 30.) In a written notice mailed to plaintiff, dated February 6, 2005, Ocwen stated that it had procured hazard insurance because, it asserted, plaintiff had failed to do so. (*Id.*) On or around April 18, 2005, Ocwen charged plaintiff $1,068.00 for the insurance. (*Id.*) Ocwen then reversed the charge on May 5, 2005. (*Id.*)

In April 2005, Ocwen sent plaintiff a written notice of default even though all the amounts allegedly outstanding were the result of charges improperly posted to plaintiff's account. (*Id.* ¶ 29.) Ocwen reflected additional late charges to plaintiff's

account in monthly statements dated June 17, 2005, July 5, 2005, and August 3, 2005, although plaintiff had not been late in making her payments. (*Id.* ¶ 31.) On August 1, 2005, plaintiff telephoned Ocwen and spoke to an employee named Mary, who told plaintiff that the late charges were the result of errors by the "old" Ocwen and that these errors would be corrected. (*Id.* ¶ 32.) Despite these assurances, and subsequent telephone requests by plaintiff in September and October 2005, the account was not corrected. (*Id.* ¶ 33.)

In October 2005, an unidentified Ocwen employee told plaintiff by telephone that Ocwen would not accept plaintiff's payments because she was in default. (*Id.* ¶ 34.) On or around November 29, 2005, plaintiff spoke by telephone to an Ocwen employee who identified herself as "J. Roberson" and who allowed plaintiff to make three payments that Ocwen had previously refused to accept. (*Id.*) Plaintiff made a payment on November 29, 2005. (*Id.*) J. Roberson told plaintiff that the payment would bring her loan current, including all disputed late charges. (*Id.*)

In January 2006, plaintiff learned that the payment she made on November 29, 2005 had not been credited, and Ocwen returned the check for plaintiff's January 2006 payment, falsely claiming that the check was insufficient. (*Id.* ¶ 35.)

On or around February 10, 2006, Ocwen caused Cal–Western to issue a notice of default and election to sell. (*Id.* ¶ 36.) Plaintiff spoke to an Ocwen representative who told plaintiff that she needed to pay $7,772.00 to bring her loan current through March 2006. (*Id.* ¶ 37.) Although plaintiff paid this amount by wire transfer on February 22, 2006, she received a reinstatement quote dated February 28, 2006, falsely stating that she owed additional money. (*Id.*)

In June 2006, plaintiff was falsely informed that she owed a monthly payment of $1,660.29, when the actual amount owed was $1,295.00. (*Id.* ¶ 39.) Plaintiff paid $1,660.29 in the expectation that she would receive a credit toward the following month's payment. (*Id.*) In or around June 2006, plaintiff's on-line account statement reflected that her next payment due would be in the amount of $807.50, but a written account statement mailed to plaintiff, dated June 26, 2006, falsely stated that she owed more than $6,000, including late charges and fees that plaintiff did not owe and that Ocwen had repeatedly refused to correct. (*Id.* ¶ 40.)

In October 2006, Ocwen issued another notice of default in which it falsely claimed that no payments had been made, when in fact Ocwen was holding plaintiff's payments in a suspense account or escrow account. (*Id.* ¶ 41.) Ocwen also falsely claimed that plaintiff had not maintained insurance on the Property. (*Id.*)

Throughout 2006, plaintiff repeatedly telephoned Ocwen and was told by Ocwen representatives that Ocwen's errors would be corrected, but despite these assurances, Ocwen failed to correct its errors. (*Id.* ¶ 42.) Plaintiff alleges that Ocwen never intended to correct its errors, but "sought deliberately to cause [plaintiff] to appear to be in default so that it could continue to charge improper and inflated fees." (*Id.* ¶ 43.) Plaintiff further alleges that Ocwen falsely informed credit reporting agencies that plaintiff "was in default on her loan when Ocwen knew and should have known that any defaults were the result of Ocwen's inaccurate and fraudulent accounting." (*Id.* ¶ 44.)

In December 2006, Ocwen and/or HSBC caused Cal–Western to issue a "Notice of Default and Election to Sell." (*Id.* ¶ 46.) Ocwen returned plaintiff's payment checks for December 2006 and January 2007,

claiming falsely that the payments were not sufficient when it knew or should have known that the payments were sufficient. (*Id.* ¶ 45.)

In or around March 2007, Ocwen informed plaintiff both orally and in writing that the only way for her to prevent the foreclosure of her home was to sign a "forbearance agreement" that required plaintiff to acknowledge owing additional fees and charges, to make an immediate "down payment" of $1,661.00, and to accept an increase in monthly payments from $1,295.00 to $1,700.00 per month. (*Id.* ¶ 47.) Faced with Ocwen's false claims of default and believing she had no choice, plaintiff signed the agreement and made payments of $1,700.00 per month according to its terms until approximately October 2008. (*Id.*)

In February 2008, Ocwen sent plaintiff a letter offering her a "loan modification" that would increase plaintiff's balance to more than $166,000.00, even though according to a February 18, 2008 monthly statement, plaintiff's outstanding balance was about $155,000.00 and the disputed additional fees and charges totaled only $4,755.00. (*Id.* ¶ 51.) In or around October 2008, Ocwen refused to accept additional payments under the forbearance agreement and informed plaintiff that the only way to avoid foreclosure was to sign the loan modification agreement. (*Id.* ¶ 53.) Plaintiff furnished information that Ocwen requested to process the modification. (*Id.* ¶¶ 52–53.) In or around November 2008, an Ocwen representative told plaintiff by telephone that Ocwen could not accept additional payments until the loan modification had been approved and that the process would take thirty days. (*Id.* ¶ 54.)

In a written communication dated December 12, 2008, Ocwen falsely claimed that the Property was unoccupied—even though Ocwen knew or should have known

that plaintiff and her family had continuously occupied the Property—and charged plaintiff for the inspection and maintenance of her Property. (*Id.* ¶ 55.)

Plaintiff repeatedly called Ocwen to try to determine the status of her loan modification and to process her December 2008 payment, but Ocwen refused to process any payments or to provide plaintiff with any information. (*Id.* ¶ 58.) In late December 2008 or early January 2009, plaintiff again contacted Ocwen to obtain a payoff amount in order to cure Ocwen's claim that plaintiff had defaulted on her loan. (*Id.* ¶ 59.) Plaintiff spoke to an Ocwen representative who agreed to process a request for a "reinstatement quote" in the amount of $8,258.60. (*Id.*)

When plaintiff contacted Ocwen to obtain the status of her modification agreement on January 6, 2009, Ocwen told plaintiff that her Property was scheduled to be sold at foreclosure on January 15, 2009. (*Id.* ¶ 60.) Between January 6 and January 14, 2009, plaintiff contacted Ocwen several times to make a payment, but Ocwen declined her attempts "pending completion of the loan modification." (*Id.* ¶ 62.) On January 14, 2009, plaintiff spoke with an Ocwen representative named Evelyn, who informed plaintiff that her loan would be cured and the foreclosure sale would not proceed if plaintiff agreed to transmit the amount on the "reinstatement quote" to Ocwen. (*Id.* ¶ 63.) Plaintiff immediately ordered the wire transfer of $8,258.60 to J.P. Morgan, as provided for by written agreement, and confirmed placement of the wire transfer with Ocwen by fax on the same day. (*Id.* ¶ 64.)

On January 16, 2009, Ocwen sent plaintiff a loan payoff quote that included a breakdown of the payoff funds with an expiration date of January 26, 2009. (*Id.* ¶ 65.) Plaintiff understood this payoff quote to be confirmation that a foreclosure

sale did not take place. (*Id.*) However, Cal–Western had conducted a trustee's sale on January 15, and title to the Property was transferred to defendant James York ("York") by a deed executed on January 17, 2009. (*Id.* ¶ 66.)

Around January 30, 2009, plaintiff received a three day notice to quit from York.[3] (*Id.* ¶ 69.) Thereafter, around January 31, Evelyn informed plaintiff that Ocwen had received plaintiff's wire transfer but that the house was sold in foreclosure because the money had not been received "in time." (*Id.* ¶ 70.) Evelyn told plaintiff that she (Evelyn) had contacted York and advised him that the sale was a mistake, but that York had refused Ocwen's request to rescind the sale. (*Id.*) When plaintiff contacted York directly and asked him to rescind the sale, York claimed he told Ocwen that he would agree to rescind upon receipt of proof from Ocwen that plaintiff made the January 14 wire payment. (*Id.* ¶ 71.) York claimed, however, that Ocwen never sent him proof.[4] (*Id.*)

Plaintiff alleges that between 2005 and 2009, Ocwen provided services to plaintiff in addition to billing and collecting payments. (*Id.* ¶¶ 48–57.) Plaintiff alleges that Ocwen "repeatedly offered (or pretended) to counsel and advise [plaintiff] on the best way to avoid foreclosure and to keep her home." (*Id.* ¶ 48.) In a purported effort to guide and assist plaintiff, Ocwen requested detailed financial information from plaintiff which it directed her to return to her "Loan Resolution Consultant." (*Id.* ¶ 50.) Plaintiff asserts that "Ocwen's conduct was designed to and did create a relationship different from the usual borrower/lender relationship," arguing that this unusual relationship gave rise to a fiduciary duty and a duty of care on the part of Ocwen. (*Id.* ¶ 57.)

On May 29, 2009, plaintiff filed this action against defendants Ocwen, Fidelity, Cal–Western, and York, as well as MERS, in the California Superior Court, San Joaquin County. (Docket No. 1.) On October 28, 2009, plaintiff filed her first amended complaint ("FAC"), adding defendants J.P. Morgan Chase & Co. ("J.P. Morgan") and J.P. Morgan Chase Bank, N.A. ("Chase Bank"). (*Id.*) Ocwen and MERS removed the FAC to this court on November 27, 2009, on the basis of federal question jurisdiction, 28 U.S.C. § 1331. On December 10, 2009, Ocwen and MERS filed a motion to dismiss the FAC pursuant to Rule 12(b)(6). The court on April 14, 2010, 2010 WL 1493131, issued a Memorandum and Order ("the Order") granting in part and denying in part the motion. Plaintiff filed her SAC on May 6, 2010. Plaintiff voluntarily dismissed her claims against J.P. Morgan and Chase Bank and added HSBC as a defendant. In her SAC, plaintiff pleads fourteen claims for relief: (1) cancellation of trustee's deed; (2) quiet title; (3) injunctive relief; (4) breach of contract; (5) breach of third party beneficiary obligations; (6) fraud and deception; (7) fraudulent business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200, *et seq.;* (8) violation of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ.Code §§ 1788 *et seq.;* (9) unjust enrichment; (10) breach of fiduciary duty; (11) negligence; (12) violation of the federal Racketeer Influenced

---

3. Plaintiff's SAC alleges that she received the notice to quit from Coral Park Mortgage, Inc. which plaintiff describes as a "shell corporation" used by York "to avoid tax withholding obligations in real estate transactions." (SAC ¶ 69.)

4. York subsequently filed an unlawful detainer complaint against plaintiff on February 9, 2009, claiming title and the right to possession under the trustee's deed. (*Id.* ¶ 73.)

and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c),(d); (13) intentional interference with contractual relations; and (14) negligent interference with contractual relations.

## STANDARDS

### I. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). A plaintiff need not allege " 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose,* 788 F.2d 638, 643 n. 2 (9th Cir.1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). Only where plaintiffs have failed to "nudge[ ] their claims across the line from conceivable to plausible" is the complaint properly dismissed. *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S.Ct. at 1949. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

### II. Rule 12(f)

Federal Rule of Civil Procedure 12(f) enables the court on a motion by a party

or by its own initiative to "order stricken from any pleading … any redundant, immaterial, impertinent, or scandalous matter." The function of a Rule 12(f) motion is to avoid the time and expense of litigating spurious issues. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (2d ed. 1990).

■ Rule 12(f) motions are generally viewed with disfavor and not ordinarily granted because they are often used to delay and because of the limited importance of the pleadings in federal practice. *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1478 (C.D.Cal.1996). A motion to strike should not be granted unless it is absolutely clear that the matter to be stricken could have no possible bearing on the litigation. *Lilley v. Charren*, 936 F.Supp. 708, 713 (N.D.Cal.1996).

## ANALYSIS

### I. Motion to Dismiss

Defendants move to dismiss plaintiff's claims for quiet title, breach of contract, breach of third-party beneficiary obligations, fraud, fraudulent business practices, violation of the RFDCPA, unjust enrichment, breach of fiduciary duty, negligence, violation of RICO, intentional interference with contractual relations, and negligent interference with contractual relations. (Defs.' Mot. to Dismiss SAC ("Defs.' Mot.") at 2.) In connection with their motion, defendants ask the court to take judicial notice of eight exhibits, including, among other documents, a Deed of Trust and Rider To Security Instrument executed by plaintiff on October 22, 2004, in favor of Fidelity, (Request Judicial Notice Supp. Defs.' Mot. to Dismiss Pls.' SAC ("RFJN"), Ex. 1); an Assignment of Deed of Trust executed by

MERS on November 27, 2006, (RFJN, Ex. 5); and a Trustee's Deed Upon Sale, dated January 17, 2009, conveying the Property to defendant York, (RFJN, Ex. 8). Plaintiff objects to defendants' request. (Docket No. 35.)

### A. Defendants' Exhibits

■ In ruling upon a motion to dismiss, the court may consider matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F.Supp.2d 1035, 1042 (C.D.Cal.1998). Rule 201 permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute" because the fact is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The court can take judicial notice of matters of public record, such as pleadings in another action and records and reports of administrative bodies. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir.1988).

■ "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* The policy concern underlying the rule is to prevent plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents

upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998), *superceded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir.2006).

Here, several of plaintiff's claims for relief are dependent upon, and plaintiff's complaint repeatedly refers to, information contained in the deed of trust (RFJN, Ex. 1), the assignment of the deed of trust (RFJN, Ex. 5), and the trustee's deed upon sale (RFJN, Ex. 8). (*See* SAC ¶¶ 11–15, 17–20, 66–68.) Because they form the basis of several of plaintiff's claims for relief, the court takes judicial notice of these documents. Accordingly, the court will treat exhibits 1, 5, and 8 as part of the complaint and will assume that their contents are true for purposes of the motion to dismiss. *See Ritchie*, 342 F.3d at 908.[5]

## B. Quiet Title

In her second claim for relief, plaintiff seeks to quiet title to the Property against the claims of Fidelity, HSBC, and York, pursuant to California Civil Procedure Code §§ 760.010–764.080. (SAC ¶¶ 85–90.) Plaintiff asserts she is the rightful owner in fee simple and that the trustee's deed "is void and subject to cancellation and rescission." (*Id.* ¶¶ 86–87.)

■ The purpose of a quiet title action is to determine " 'all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to.' " *Newman v. Cornelius*, 3 Cal.App.3d 279, 284, 83 Cal.Rptr. 435 (1970) (quoting *Peterson v. Gibbs*, 147 Cal. 1, 5, 81 P. 121 (1905)); *see also Garcia v. Wachovia Mortgage Corp.*, 676 F.Supp.2d 895, 913 (C.D.Cal.2009). A plaintiff may bring a quiet title claim "to establish title against adverse claims to real or personal property or any interest therein." Cal.Civ.Proc.Code § 760.020.

In order to state a claim for quiet title, the complaint must be verified and include (1) a legal description of the property and its street address or common designation; (2) the title of the plaintiff and the basis of the title; (3) the adverse claims to the title of the plaintiff; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff against the adverse claims. *Id.* § 761.020. Further, a plaintiff "shall name as defendants in the action the persons having adverse claims to the title of the plaintiff against which a determination is sought." *Id.* § 762.010. "If the claim or the share or quantity of the claim of a person required to be named as a defendant is unknown, uncertain, or contingent, the plaintiff shall so state in the complaint." *Id.* § 762.020(b).

■ California courts have generally held that "the owner of an equitable interest cannot maintain an action to quiet title against the owner of the legal title." *Stafford v. Ballinger*, 199 Cal.App.2d 289, 294–95, 18 Cal.Rptr. 568 (1962); *see also De Leonis v. Hammel*, 1 Cal.App. 390, 394, 82 P. 349 (1905). The rationale underlying this rule is that " 'if the owner of equities could sue to quiet title he might obtain a judgment based upon his adversary's fraud without setting up, in his pleadings[,] the facts constituting such fraud. This would be manifestly unfair.' " *Kennedy v. Scally*, 62 Cal.App. 367, 371, 217 P. 96 (1923) (quoting *Aalwyns Law Inst. v. Martin*, 173 Cal. 21, 26, 159 P. 158 (1916)). Consequently, where the pleadings in an action "set up the facts" upon which a claim of title is based, plaintiffs may be "entitled to a decree determining their interest in the

---

5. Plaintiff also objects to the other exhibits to the RFJN. Because the court addresses plaintiff's SAC without resort to these documents, plaintiff's remaining objections are overruled as moot.

land." *Kennedy,* 62 Cal.App. at 371, 217 P. 96; *see also Leeper v. Beltrami,* 53 Cal.2d 195, 214, 1 Cal.Rptr. 12, 347 P.2d 12 (1959) (noting that "where the legal title is in the defendant, and the plaintiff seeks to quiet title on the ground defendant's title was secured from plaintiff by fraud, the plaintiff must plead and prove facts constituting the fraud."). Indeed, when the legal title to property has been acquired by fraud, the available remedies include "quieting title in the defrauded equitable title holder's name and making the legal title holder the constructive trustee of the property for the benefit of the defrauded equitable titleholder." *Warren v. Merrill,* 143 Cal.App.4th 96, 114, 49 Cal.Rptr.3d 122 (2006); *see also De Leonis,* 1 Cal.App. at 394, 82 P. 349 (explaining that where "the facts upon which plaintiff's claim is based, are alleged, there is authority to grant any proper relief" permitted under the California Code of Civil Procedure).

Here, defendants argue that (1) plaintiff fails to state a claim because "California does not recognize a challenge to the title by an owner of a merely equitable interest in the property"; (2) plaintiff fails to allege a valid offer of tender of the amount of indebtedness to defendants; and (3) HSBC is not a proper defendant because HSBC has no adverse claim to plaintiff's title. (Defs.' Mem. P. & A. Supp. Mot. Dismiss SAC ("Defs.' Mem.") at 2–3.)

### 1. Quiet Title Claim Against Legal Title Holder

■ Defendants assert that plaintiff fails to state a claim to quiet title because the legal title to the Property is held by defendant York. (Defs.' Mem. at 3.) However, plaintiff alleges that any defaults on her loan leading to the foreclosure sale of the Property were "the result of Ocwen's inaccurate and fraudulent accounting" (SAC ¶ 44), and thus, that the trustee's deed to York should be set aside as unauthorized and void. (*Id.* ¶ 87.) Plaintiff

alleges a pattern of fraudulent conduct culminating in the foreclosure sale. (*Id.* ¶ 21.) Because plaintiff asserts that the legal title to the Property was acquired through fraud and alleges a factual basis for her assertion, the rule precluding a holder of equitable title from bringing a quiet title claim against the legal title holder is inapplicable here. *See, e.g., De Leonis,* 1 Cal.App. at 394, 82 P. 349.

### 2. Tender of the Amount of Indebtedness

Defendants' assertion that plaintiff failed to tender the amount of indebtedness to defendants is likewise without merit. As the court held in its prior Order, plaintiff sufficiently alleges that she entered a reinstatement quote agreement with Ocwen to cure her alleged default and that she timely wired $8,258.60 in accordance with Ocwen's instructions. (SAC ¶¶ 63–64.) Construing these allegations in the light most favorable to the plaintiff, it is plausible to infer that she fulfilled her obligations under the agreement, and thus, that Ocwen had no contractual basis to exercise the power of sale.

### 3. Proper Defendant

Finally, defendants argue that HSBC is not a proper defendant to plaintiff's quiet title claim because HSBC has no claim to the title. (Defs.' Mem. at 3.) Plaintiff counters that HSBC may have a claim to the Property if plaintiff succeeds in obtaining a decree setting aside the trustee's deed transferring the Property to defendant York. (Pl.'s Opp. Mot. to Dismiss SAC ("Pl.'s Opp.") at 5–6.) Plaintiff thus appears to allege a claim by HSBC that is uncertain or contingent, as contemplated under California Civil Procedure Code § 762.020(b).

■ According to the assignment of the deed of trust, MERS as nominee for Fidelity assigned all rights, title, and interest in

the Property to HSBC, the assignee beneficiary, on November 27, 2006. (RFJN Ex. 5.) Plaintiff states: "It is unclear what rights, if any, defendant HSBC Bank could have acquired by reason of this Assignment, since MERS was solely the nominee of Fidelity under the Deed of Trust and does not appear to have had any rights under the Promissory Note." (SAC ¶ 18.) Construing the SAC in the light most favorable to plaintiff, the court finds that plaintiff alleges alternate theories, including the theory that HSBC as beneficiary of the deed of trust held an interest in the Property prior to the foreclosure sale.

The beneficiary of a deed of trust containing a power of sale may proceed with a nonjudicial foreclosure sale upon default by the trustor. *See Moeller v. Lien,* 25 Cal.App.4th 822, 830, 30 Cal.Rptr.2d 777 (1994). "This interest, the benefici[ary]'s power to cause a sale of the property, is effectively a lien on the property." *Yulaeva v. Greenpoint Mortgage Funding, Inc.,* No. S–09–1504, 2009 WL 2880393, at *9 (E.D.Cal.2009); *see also Monterey S.P. Partnership v. W.L. Bangham,* 49 Cal.3d 454, 460, 261 Cal.Rptr. 587, 777 P.2d 623 (1989). The beneficiary's security interest in the property may be the subject of a quiet title action. *See* Cal. Civ. Pro.Code § 760.010(a); *Yulaeva,* 2009 WL 2880393, at *9.

Here, if plaintiff prevails in her attempt to obtain a decree setting aside the trustee's deed and the parties are restored to the positions they held prior to the sale, HSBC would potentially be the holder of a security interest in the Property and may thus be an adverse claimant for the purposes of plaintiff's quiet title claim.

Accordingly, defendants' motion to dismiss plaintiff's second claim for relief as to defendant HSBC is DENIED.

## C. Breach of Contract

In her fourth claim for relief, plaintiff alleges that Fidelity, HSBC, and Ocwen are liable to her for breach of contract. (SAC ¶¶ 94–104.) Plaintiff also appears here to proceed under alternate theories according to which Ocwen is either an agent of an undisclosed principal or is itself the principal liable to plaintiff. (*See* SAC ¶ 100.) Plaintiff alleges that Fidelity assigned to Ocwen the loan servicing rights and obligations pertaining to the promissory note and deed of trust and that Ocwen breached obligations it assumed. (*Id.* ¶¶ 94–104.) Further, plaintiff alleges that Ocwen on its own behalf entered into a "Forbearance Agreement" and a "Loan Reinstatement Agreement" with plaintiff. (*Id.* ¶¶ 98–101.)

Plaintiff asserts that she performed all her obligations under the agreements and that "Fidelity, HSBC Bank and Ocwen breached the terms of the Promissory Note, the Forbearance Agreement and the Loan Reinstatement Agreement" by, *inter alia,* failing to credit timely payments, misapplying payments received, prematurely referring plaintiff's loan to collections, charging improper fees, and proceeding with the foreclosure sale despite plaintiff's compliance with terms for reinstatement of the loan. (*Id.* ¶ 103.)

A claim for breach of contract must include facts demonstrating (1) that a contract exists between the parties; (2) that the plaintiff performed his contractual duties or was excused from nonperformance; (3) that the defendant breached those contractual duties; and (4) that plaintiff's damages were a result of the breach. *Reichert v. Gen. Ins. Co. of America,* 68 Cal.2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377 (1968); *First Commercial Mortgage Co. v. Reece,* 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001). "A written contract may be pleaded either by its

terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect." *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1489, 49 Cal.Rptr.3d 227 (2006). Pleading a contract by its legal effect requires the plaintiff to "'allege the substance of its relevant terms,'" which is "'more difficult'" because the plaintiff must engage in "'careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions.'" *Id.* (quoting 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading § 480, p. 573).

Defendants argue that plaintiff fails to state a breach of contract claim against Ocwen because Ocwen was not a party to the promissory note and merely functioned as the servicer of the loan in making a forbearance agreement and loan modification agreement with plaintiff. (Defs.' Mem. at 4.) Defendants further argue that plaintiff fails to state a breach of contract claim against Ocwen because plaintiff does not state whether the alleged contracts were oral or written, does not attach the agreements to the SAC, and does not set forth the terms of the contracts. (*Id.* at 5.) Finally, defendants argue that plaintiff fails to state a breach of contract claim against HSBC because plaintiff fails to allege the existence of any contract between plaintiff and HSBC or to allege facts that would give rise to a plausible claim for breach of contract by HSBC. (*Id.* at 5–6.)

Contrary to defendants' assertions, plaintiff alleges a theory of liability under which Ocwen assumed contractual obligations to plaintiff arising out of the promissory note and deed of trust and independently entered two additional contracts with plaintiff: a forbearance agreement and a loan modification agreement. (SAC ¶¶ 97–101.) Thus, plaintiff sufficiently alleges the existence of contracts between plaintiff and Ocwen. Likewise,

although plaintiff's allegations regarding the role of HSBC are less than fully clear, a liberal construction of the SAC permits the court to infer an alternative theory of liability according to which HSBC assumed contractual obligations to plaintiff when MERS assigned the deed of trust to HSBC. (*See* SAC ¶ 18) (alleging that MERS assigned its interest in the mortgage to HSBC).

With respect to the forbearance agreement and the loan reinstatement agreement, plaintiff has neither attached these documents to her complaint nor stated their terms verbatim, and her allegations are too vague to plead the legal effect of either document. However, the court has taken judicial notice of the deed of trust, and plaintiff alleges sufficient facts to state a plausible claim for breach of various obligations arising under the deed of trust against both Ocwen and HSBC.

Accordingly, defendants' motion to dismiss plaintiff's claim for breach of contract is DENIED as to the allegations concerning the deed of trust and GRANTED with leave to amend concerning all other alleged contracts.

### D. Breach of Third Party Beneficiary Obligations

In her fifth claim for relief, plaintiff alleges that Ocwen entered into an agreement or agreements with Fidelity and/or with HSBC and that the agreement(s) were intended to benefit plaintiff. (SAC ¶¶ 105–07.) Plaintiff alleges that Ocwen breached the agreement(s) by, *inter alia,* failing to credit timely payments, misapplying payments received, prematurely referring plaintiff's loan to collections, charging improper fees, and proceeding with the foreclosure sale despite plaintiff's compliance with terms for reinstatement of the loan. (*Id.* at ¶ 108.)

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ.Code § 1559. The contract "does not need to specifically name the party as the beneficiary; the only requirement is that 'the party is more than incidentally benefitted by the contract.'" *Cartwright v. Viking Indus., Inc.,* No. 2:07–CV–02159, 2009 WL 2982887, *9 (E.D.Cal. Sept. 14, 2009) (quoting *Shell v. Schmidt,* 126 Cal.App.2d 279, 290, 272 P.2d 82 (1954)). "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." *Johnson v. Holmes Tuttle Lincoln–Mercury, Inc.,* 160 Cal.App.2d 290, 297, 325 P.2d 193 (1958). "If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person." *Id.*

Here, defendants argue that plaintiff has not alleged any facts to demonstrate that Ocwen and HSBC intended plaintiff to be the beneficiary of the servicing agreement, and that plaintiff has not sufficiently alleged facts to establish a breach of the servicing agreement. (Defs.' Mem. at 7–8.) However, plaintiff alleges that Ocwen and Fidelity and/or HSBC entered one or more agreements requiring Ocwen to provide various services to plaintiff, including billing plaintiff, providing her with information regarding her account, and consulting with plaintiff regarding loan modification and forbearance. (*See* SAC ¶¶ 48–57.) Thus, plaintiff sufficiently alleges that she is the third party beneficiary of one or more contracts between Ocwen and Fidelity and/or HSBC. Further, plaintiff's allegations are sufficient to put defendants on notice of the basis of her claims. Accordingly, defendants' motion to dismiss plaintiff's fifth claim for relief is DENIED.

### E. Fraud

Plaintiff in her sixth claim for relief alleges that Ocwen engaged in fraud by making false and misleading statements to plaintiff regarding the status of her loan. (SAC ¶¶ 110–116.)

Under Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements, to allege a claim for fraud, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R.Civ.P. 9(b). In other words, the plaintiff must include "the who, what, when, where, and how" of the fraud. *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003) (citations omitted). Further, "[w]hen a fraudulent statement is alleged, the plaintiff must set forth what is false or misleading about the statement, and why it is false." *Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F.Supp. 1297, 1308 (C.D.Cal. 1996) (internal quotations and citation omitted). The purpose of Rule 9(b) is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations. *Concha v. London,* 62 F.3d 1493, 1502 (9th Cir.1995).

Furthermore, when asserting a fraud claim against a corporation, a "plaintiff's burden ... is even greater.... The plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Lazar v. Superior Court,* 12 Cal.4th 631, 645, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996) (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991)); *see also*

*Akhavein v. Argent Mortgage Co.,* No. 5:09–cv–00634, 2009 WL 2157522, at *4, 2009 U.S. Dist. LEXIS 61796, at *10 (N.D.Cal. July 17, 2009); *Edejer v. DHI Mortgage Co.,* No. C 09–1302, 2009 WL 1684714, at *12, 2009 U.S. Dist. LEXIS 52900, at *36 (N.D.Cal. June 12, 2009) (dismissing fraud claim where plaintiff did not allege any misrepresentation or false statements made by defendants and failed to allege names of individuals who made fraudulent representations).

▆▆▆ Defendants contend that plaintiff fails to state a claim for fraud because plaintiff "does not contend and her allegations do not support an inference" that Ocwen committed any acts with a specific intent to defraud her. (Defs.' Mem. at 8.) However, under Rule 9(b), "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Here, plaintiff alleges that "Ocwen engaged in a pattern and scheme to disseminate false and misleading information in order to confuse and trick [plaintiff] into making payments of amounts that were not due and into believing that [her loan] was in default when in fact the loan was not in default." (*Id.* ¶ 111.) These allegations sufficiently allege intent to engage in fraud, and thus, plaintiff satisfies her pleading burden under Rule 9(b).

Accordingly, defendants' motion to dismiss plaintiff's fraud claim is DENIED.

### F. California Business & Professions Code § 17200

In her seventh claim for relief, plaintiff alleges that defendants Ocwen, York, Fidelity, and HSBC violated § 17200 of the California Business and Professions Code by engaging in fraudulent business practices. (SAC ¶¶ 117–20.)

▆▆▆ The Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code §§ 17200 *et seq.,* forbids acts of unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice." *Id.* § 17200. The UCL "incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law." *Plascencia v. Lending 1st Mortgage,* 583 F.Supp.2d 1090, 1098 (N.D.Cal.2008); *see also Farmers Ins. Exch. v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487, 826 P.2d 730 (1992). "California's UCL has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices not specifically proscribed by any other law.'" *Hauk v. JP Morgan Chase Bank U.S.A.,* 552 F.3d 1114 (9th Cir.2009) (internal citations omitted). "Violation of almost any federal, state, or local law may serve as the basis for a UCL claim." *Plascencia,* 583 F.Supp.2d at 1098 (citing *Saunders v. Superior Court,* 27 Cal. App.4th 832, 838–39, 33 Cal.Rptr.2d 438 (1994)).

Defendants argue that plaintiff fails to allege her claim with sufficient particularity, and that plaintiff's claim against HSBC fails because plaintiff does not allege a claim for fraud against HSBC. (Defs.' Mem. at 9.)

Plaintiff's UCL claim is founded upon the same allegations as her fraud claim, and as set forth *supra,* plaintiff's allegations are sufficient to state a claim for fraud against Ocwen. However, plaintiff does not plead any facts to establish fraudulent conduct by HSBC. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP,* 476 F.3d 756, 765–766 (9th Cir.2007) (internal quotation and citation

omitted). Because plaintiff fails to state any allegations of fraud against HSBC, let alone allegations sufficient to satisfy the heightened pleading standards of Rule 9(b), plaintiff's UCL allegations against HSBC fail to state a claim.

Accordingly, defendants' motion to dismiss plaintiff's claim for violations of California Business & Professions Code § 17200 is DENIED with respect to Ocwen and GRANTED with leave to amend with respect to HSBC.

### G. California's Rosenthal Act

Plaintiff in her eighth claim for relief alleges that Ocwen violated California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ.Code §§ 1788 *et seq.*, by falsely representing plaintiff's debt, by adding unwarranted debt, by falsely informing credit reporting agencies that plaintiff had defaulted on her loan when it knew that these statements would defame plaintiff, and by placing telephone calls seeking financial information about plaintiff without disclosing the identity of the caller. (SAC ¶ 122.)

The purpose of the RFDCPA is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ.Code § 1788.1(b). The RFDCPA defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." § 1788.2(c). A debt collector violates the act, *e.g.*, when it engages in threats, use of profane language, or harassment; when it places telephone calls without disclosing the caller's identity; when it communicates to a third party that a debtor has engaged in conduct, other than failure to pay a consumer debt, that the debt collector knows or has reason to believe will defame the debtor;

and when it makes a false representation that a consumer debt may be increased by the addition of fees or other charges if such fees or charges may not be lawfully added to the existing debt. *Id.* §§ 1788.10; 1788.11(a), (b), (e); 1788.13(e).

■ Ocwen argues that plaintiff fails to state a claim under the RFDCPA (1) because Ocwen is not a "debt collector" within the meaning of the act and (2) because plaintiff fails to allege any facts demonstrating a violation of RFDCPA. (Defs.' Mem. at 10–11.) The RFDCPA's definition of "debt collector" broadly encompasses "any person" who regularly engages in debt collection. Cal. Civ.Code § 1788.2(c). Here, plaintiff alleges that Ocwen regularly billed her and collected payments on her mortgage loan debt from 2004 through 2009. (*See* SAC ¶ 17.) Thus, plaintiff pleads sufficient facts to show that Ocwen is a "debt collector" under the RFDCPA.

As defendants point out, some federal district courts have broadly held that the RFDCPA does not apply to mortgage foreclosures. *See, e.g., Rosal v. First Fed. Bank of Cal.,* 671 F.Supp.2d 1111, 1135 (N.D.Cal.2009). Here, however, the gravamen of plaintiff's claim is that Ocwen engaged in a pattern of improper conduct in the course of servicing her loan, ultimately causing the wrongful foreclosure of the home. Hence, plaintiff's claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process, and consequently, a remedy may be available under the RFDCPA. *See Wilson v. JPMorgan Chase Bank, NA,* No. CIV 2:09–8630, 2010 WL 2574032, at *10 (E.D.Cal. June 25, 2010) (dismissing an RFDCPA claim where the plaintiff did not identify "any debt collection actions of defendants that fall outside the normal foreclosure process").

Turning to the substance of her claim, plaintiff asserts that Ocwen violated

RFDCPA by making defamatory statements about her to credit reporting agencies and by placing anonymous calls seeking financial information about her. (SAC ¶ 122.) But plaintiff fails to plead any details regarding the alleged statements and calls. These bare allegations thus fail to put Ocwen on notice of the basis for the alleged RFDCPA violations. *See Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. However, plaintiff does sufficiently allege facts to support her claim that Ocwen represented to plaintiff that she would be charged unlawful fees. (*See, e.g.*, SAC ¶¶ 31, 38.)

Accordingly, defendants' motion to dismiss plaintiff's claim for violations of the RFDCPA is DENIED as to the allegations that Ocwen represented that plaintiff would be charged unlawful fees, and GRANTED with leave to amend as to all other allegations.

## H. Unjust Enrichment/Restitution

In her ninth claim for relief, plaintiff alleges that Ocwen, York, Fidelity, and HSBC "unjustly benefitted from the acts described" in the SAC and unjustly retained benefits at her expense. (SAC ¶ 124–26.)

In order to establish a claim for unjust enrichment, a plaintiff must plead "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000). Furthermore, the plaintiff must demonstrate that the defendant received the benefit through mistake, fraud, coercion or request. *Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal.App.3d 1415, 1422, 253 Cal.Rptr. 289 (1988).

HSBC argues that plaintiff fails to allege any facts demonstrating that HSBC unjustly received and retained a benefit, and that plaintiff thus fails to state a claim for unjust enrichment against HSBC.

(Defs.' Mem. at 11–12.) In its prior Order, the court held that plaintiff had sufficiently alleged that by proceeding with the trustee's sale despite plaintiff's compliance with the reinstatement quote, Ocwen unjustly received a benefit. (Order at 26.) Liberally construing the allegations in the SAC, plaintiff may be understood to allege an alternative theory of liability under which HSBC by assignment became the beneficiary of the deed of trust and Ocwen's principal, that HSBC instigated the trustee's sale, and that HSBC thus unjustly received the proceeds of an improper foreclosure sale. (*See* SAC ¶ 18–19.) Consequently, plaintiff alleges sufficient facts to state a claim for unjust enrichment against HSBC.

Accordingly, defendants' motion to dismiss plaintiff's claim for unjust enrichment is DENIED.

## I. Breach of Fiduciary Duty

Plaintiff in her tenth claim for relief alleges breach of fiduciary duty by defendants Ocwen, Fidelity, and HSBC. (SAC ¶¶ 127–30.) Plaintiff bases her claim on Ocwen's conduct in servicing her loan, pointing, *inter alia*, to Ocwen's alleged failure to timely credit payments, failure to provide plaintiff with timely information regarding her loan, and imposition of improper fees. (*Id.* ¶ 128.)

"To state a claim for breach of a fiduciary duty, 'a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages.'" *Serrano v. Sec. Nat'l Mortgage Co.*, No. 09–CV–1416, 2009 WL 2524528, at *5, 2009 U.S. Dist. LEXIS 71725, at *12–13 (S.D.Cal. Aug. 14, 2009) (quoting *Shopoff & Cavallo LLP v. Hyon*, 167 Cal.App.4th 1489, 1509, 85 Cal.Rptr.3d 268 (2008)). "Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the bor-

rower and lender.' " *Rangel v. DHI Mortgage Co., Ltd.,* No. CV F 09–1035, 2009 WL 2190210, at *5, 2009 U.S. Dist. LEXIS 65674, at *8 (E.D.Cal. July 21, 2009) (quoting *Oaks Mgmt. Corp. v. Superior Court,* 145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006)); *see also Nymark v. Heart Fed. Savings & Loan Ass'n,* 231 Cal. App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991) (stating that "As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.").

██ Ocwen and HSBC argue that plaintiff fails to state a claim because plaintiff fails to establish a fiduciary duty on the part of either Ocwen or HSBC. (Defs.' Mem. at 12–13.) Curiously, or perhaps tellingly, the only precedent plaintiff cites in support of her claim is a case in which the Ninth Circuit refused to hold as a matter of law that the relationship between an investment banker and a client could not be a fiduciary relationship. *In re Daisy Systems Corp.,* 97 F.3d 1171, 1178 (9th Cir.1996). Rather, the Ninth Circuit stated, "the existence of a fiduciary relation is a question of fact which properly should be resolved by looking to the particular facts and circumstances of the relationship at issue." *Id.*

Turning to the particular facts and circumstances alleged here, plaintiff fails to plead any allegations to plausibly suggest that her relationship with Ocwen was anything other than an ordinary, arms-length relationship. Under California law, a borrower-lender relationship does not create a fiduciary duty. *See, e.g., Rangel,* 2009 WL 2190210, at *3, 2009 U.S. Dist. LEXIS 65674, at *8. Plaintiff points to the financial "counseling" Ocwen provided her as evidence of the assumption of a fiduciary duty. (*See* SAC ¶¶ 48–57.) However, the facts plaintiff alleges do not demonstrate

more than an attempt to collect an outstanding debt. Because plaintiff does not plead facts sufficient to show how Ocwen's role in servicing her loan exceeded the conventional role of "a mere lender of money," *Nymark,* 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53, plaintiff fails to establish that Ocwen owed her a fiduciary duty. Nor does plaintiff allege facts sufficient to establish that she had any relationship whatsoever with HSBC.

While under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be freely given, the court is not required to allow *futile* amendments. *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau,* 701 F.2d 1276, 1293 (9th Cir.1983). Here, amendment of plaintiff's breach of fiduciary duty claim would be futile under the governing law described above, and plaintiff does not allege any other facts that could plausibly give rise to such a claim against defendants. *See Iqbal,* 129 S.Ct. at 1949.

Accordingly, defendants' motion to dismiss plaintiff's breach of fiduciary duty claim is GRANTED without leave to amend.

## J. Negligence

In her eleventh claim for relief, plaintiff alleges that defendants Ocwen, Fidelity, and HSBC are liable for negligence. (SAC ¶ 131–35.) Plaintiff argues that defendants owed her a duty of care, "the least of which was the accurate and timely accounting and reporting of her debt payments, and the accurate and timely communication to [plaintiff] and various credit reporting agencies of the nature and amount of her debt." (*Id.* ¶ 132.) Plaintiff alleges that defendants breached this duty, thus causing her damages in the form of financial harm, damage to her reputation, emotional distress, and the foreclosure of her home. (*Id.* ¶ 134.)

 Under California law, the elements of a claim for negligence are "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; and (c) the breach as the *proximate or legal cause* of the resulting injury." *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917, 50 Cal.Rptr.2d 309, 911 P.2d 496 (1996) (emphasis in original) (internal quotations and citation omitted); *see* Cal. Civ.Code § 1714(a). A financial institution generally has no duty of care to a borrower unless the institution exceeds the scope of the traditional role of a lender of money. *Nymark*, 231 Cal.App.3d at 1095, 283 Cal.Rptr. 53.

 Defendants argue that plaintiff's negligence claim fails as a matter of law because defendants do not owe plaintiff a tort duty of care. (Defs.' Mem. at 12–13.) As with plaintiff's breach of fiduciary duty claim, plaintiff does not allege facts that would suggest Ocwen's actions exceeded "the domain of the usual money lender." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal. Rptr. 53 (internal quotations and citation omitted). Because plaintiff does not plead sufficient allegations to show a relationship with Ocwen or HSBC outside the scope of a traditional lender-borrower relationship, she fails to establish that either Ocwen or HSBC owed her a tort duty of care. Plaintiff's reliance on *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal.App.4th 54, 70, 131 Cal. Rptr.2d 777 (2003), is inapposite. (*See* Pls.' Opp. at 16.). The court in *Shafer* recognized a duty to refrain from engaging in intentionally tortious conduct; this duty is not applicable to plaintiff's claim for negligence.

As with her breach of fiduciary duty claim, amendment of plaintiff's negligence claim would be futile under the governing law, and plaintiff fails to allege any other facts that could plausibly give rise to a duty on the part of defendants. *See Iqbal*, 129 S.Ct. at 1949.

Accordingly, defendants' motion to dismiss plaintiff's negligence claim is GRANTED without leave to amend.

## K. RICO

In her twelfth claim for relief, plaintiff alleges that Ocwen violated the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and § 1962(d), by engaging in a pattern of racketeering activity consisting of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. In addition, plaintiff alleges that Ocwen violated RICO through "the use of the mail and interstate commerce ... in violation of 18 U.S.C. § 1852;[6] and repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*"[7] (SAC ¶ 141.)

Title 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise" engaged in or affecting interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(d) makes it unlawful for any person to conspire to commit a violation of § 1962(c). The "racketeering activity" prohibited under § 1962(c) includes a variety of acts indictable under Title 18 of the United States Code, including "any act which is indictable under ... section 1341

---

6. The court construes the SAC to refer to 18 U.S.C. § 1962, and not to 18 U.S.C. § 1852, which deals with the removal or transportation of timber.

7. Violations of 15 U.S.C. § 1692 are not predicate RICO violations. *See* 18 U.S.C. § 1961(1). The court deems this language to be superfluous, and does not understand plaintiff to state a separate claim for relief under the Fair Debt Collection Practices Act.

(relating to mail fraud) [and] section 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1)(B). RICO permits "[a]ny person injured in his business or property by reason of a violation of section 1962" to recover treble damages. 18 U.S.C. § 1964(c).

Ocwen argues that plaintiff lacks standing to assert a RICO claim, and that plaintiff fails to allege the elements of a RICO claim against Ocwen. (Defs.' Mem. at 13–16.)

### 1. Standing

■■■■ A plaintiff has standing to bring a RICO claim and can recover only to the extent that "he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *See* 18 U.S.C. § 1964. Furthermore, a RICO plaintiff " 'must show proof of concrete financial loss' and must demonstrate that the racketeering activity proximately caused the loss." *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir.2006) (citing *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087 (9th Cir.2002)).

Ocwen advances two arguments in support of its contention that plaintiff lacks standing to bring her RICO claim. First, Ocwen asserts that plaintiff's claim is not within the scope of litigation contemplated under RICO because RICO was " 'intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff.' " (Defs.' Mem. at 14 (quoting *Dumas v. Major League Baseball Props., Inc.*, 104 F.Supp.2d 1220, 1221 (S.D.Cal.2000)).) Second, Ocwen maintains that plaintiff seeks to recover for injuries not compensable under RICO, citing *Berg v. First State Ins. Co.*, 915 F.2d 460, (9th Cir.1990), and *Izenberg v. ETS Servs., LLC*, 589 F.Supp.2d 1193, 1204 (S.D.Cal.2008) (Defs.'

Reply Opp. Mot. to Dismiss Pls.' SAC ("Defs.' Reply") at 7–8.)

■■■■ Regarding Ocwen's first argument, the Supreme Court has expressly declined to limit the pattern of racketeering encompassed by RICO to organized crime activity. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 248, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (explaining that "Congress for cogent reasons chose to enact a more general statute, one which, although it had organized crime as its focus, was not limited in application to organized crime"); *see also Sedima*, 473 U.S. at 497, 105 S.Ct. 3275 (stating that "RICO is to be read broadly."). Here, plaintiff bases her RICO claim on allegations of mail and wire fraud allegedly committed "on a nearly monthly basis over a period of more than four years." (Pls. Opp. at 16). Because the "racketeering activity" encompassed by RICO is defined to include mail and wire fraud, 18 U.S.C. §§ 1341, 1343, plaintiff alleges injury within the scope of RICO.

Notwithstanding Ocwen's assertions to the contrary, plaintiff also alleges losses that are compensable under RICO. Plaintiff asserts that defendants' acts of mail and wire fraud caused her financial losses in the form of excessive fees and costs, as well as the loss of her home as a result of the foreclosure sale. (Pl.'s Opp. at 18.) These alleged injuries constitute a "concrete financial loss" of plaintiff's "property," and thus satisfy the injury requirement of RICO standing. *See Guerrero*, 442 F.3d at 707.

Ocwen's reliance on *Berg* and *Izenberg* is misplaced. In *Berg*, the plaintiffs suffered no financial loss but sought RICO recovery for emotional distress. 915 F.2d at 464. The court held that emotional distress was not a compensable injury to "business or property" within the meaning of § 1964(c). *Id.* Here, by contrast, plain-

tiff alleges financial injury in the form of excess fees and costs, as well as the loss of her house. (SAC ¶¶ 21, 60–70.) Thus, *Berg* is distinguishable. Similarly, in *Izenberg*, the court found that the plaintiffs failed to state a RICO claim where the only financial injury pled consisted of legal fees and the alleged possibility of future losses in the form of foreclosure on the plaintiffs' property and excess mortgage fees. 589 F.Supp.2d at 1204–05. Here, however, plaintiff alleges actual financial losses, and *Izenberg* is therefore inapplicable. Consequently, Ocwen fails to demonstrate that plaintiff lacks standing to bring a RICO claim.

### 2. Elements of a RICO Claim

■ In order to state a claim for a violation of § 1962(c), a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

■ "To allege a violation of the mail fraud statute, it is necessary to show (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.,* 806 F.2d 1393, 1399–1400 (9th Cir.1986). The elements of wire fraud are identical but require use of the United States wires rather than the mails. *Id.* at 1400.

■ The Ninth Circuit has held that the particularity requirements of Rule 9(b) apply to RICO claims. *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 541 (9th Cir.1989). Thus, "[a]llegations of fraud under section 1962(c) must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." *Schreiber,* 806 F.2d at 1401 (internal quotations and citation omitted).

Ocwen argues that plaintiff fails to allege facts establishing a pattern of racketeering activity by Ocwen and fails to allege the existence of an enterprise within the meaning of 1962(c). (Defs.' Mem. at 15–16.)

### a. Pattern of Racketeering Activity

■ To establish a "pattern of racketeering activity" under RICO, a plaintiff must show at least two "predicate acts" of racketeering within ten years. *See* 18 U.S.C. § 1961(5); *Turner v. Cook,* 362 F.3d 1219, 1229 (9th Cir.2004). "A 'pattern' of racketeering activity also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'" *Turner,* 362 F.3d at 1229 (quoting *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. 2893). The Supreme Court has identified two types of continuity: closed-ended continuity, consisting of "a closed period of repeated conduct," and open-ended continuity, consisting of "past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.,* 492 U.S. at 241, 109 S.Ct. 2893. The Court has emphasized that continuity is "centrally a temporal concept." *Id.* at 242, 109 S.Ct. 2893. Thus, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement" because "Congress was concerned in RICO with longterm criminal conduct." *Id.*

Here, Ocwen asserts that plaintiff fails to allege (1) any conduct affecting interstate commerce and (2) "a causal connection between Ocwen's alleged wrongdoing and the purported pattern." (Defs.' Mem. at 15, 15 n. 3.)

■ While an "effect on commerce is an essential element of a RICO violation,"

the "required nexus need not be great"; indeed, even a "minimal effect on interstate commerce satisfies this jurisdictional element." *United States v. Bagnariol*, 665 F.2d 877, 892 (9th Cir.1981). Here, plaintiff alleges that Ocwen made use of the mails and wires to conduct fraudulent activities. These allegations suffice to meet the requirement of a "minimal effect on interstate commerce."

▮ Furthermore, despite Ocwen's argument that plaintiff fails to allege a "causal connection" between Ocwen's actions and a pattern of racketeering activity, plaintiff in fact alleges several specific instances of fraudulent activity between January 2005 and January 2009 involving the use of the wires and mails.[8] (*See* SAC ¶¶ 21–22, 28–29, 31, 38, 43, 55.) Plaintiff thus adduces more than two predicate acts of alleged racketeering activity and alleges a pattern of criminal activity extending beyond "a few weeks or months." *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893. Hence, plaintiff sufficiently alleges long-term criminal activity to satisfy the Supreme Court's test for a closed-ended pattern of continuity. (*See, e.g.*, SAC ¶¶ 21–22.)

#### b. Enterprise

Title 18 U.S.C. § 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise" to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. RICO broadly defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has explained that

"Section 1961(4) describes two categories of associations that come within the purview of the 'enterprise' definition. The first encompasses organizations such as corporations and partnerships, and other 'legal entities.' The second covers 'any union or group of individuals associated in fact although not a legal entity.'" *United States v. Turkette*, 452 U.S. 576, 581–82, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

The Ninth Circuit interprets § 1962(c) to require a distinction between the "person" named as the defendant and the "enterprise" with which the "person" is employed or associated. *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1533 (9th Cir. 1992). Thus, "for the purposes of a single action, a corporate defendant cannot be both the RICO person and the RICO enterprise under section 1962(c)." *Id.* at 1534.

▮ However, a plaintiff may be able to state a claim for a violation of § 1962(c) against corporate employees where the corporation is named as the "enterprise." *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001) (holding that the president and sole employee of a closely held corporation was a "person" distinct from the "enterprise" of the corporation itself); *see also Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 45 (1st Cir.1991) (explaining that "Officers of a corporate enterprise may be personally liable for civil RICO violations if they conducted their employer's affairs through a proscribed pattern of racketeering activity."). Consequently, "the inability of a corporation to operate except through its officers is not an impediment to section 1962(c) suits," and poses a problem "only when the *corpo-*

---

8. In its motion to dismiss, Ocwen does not address, and thus the court does not reach, the issue of whether plaintiff adequately alleges all the elements of wire and mail fraud

with the particularity required by Rule 9(b). Here, the court assumes without deciding that plaintiff sufficiently alleges the elements of these RICO predicate offenses.

*ration* is the named defendant—when it is both the 'person' and the 'enterprise.'" *Sever*, 978 F.2d at 1534 (emphasis in original).

In addition, "a group or union consisting *solely* of corporations or other legal entities can constitute an 'associated in fact' enterprise." *United States v. Blinder*, 10 F.3d 1468, 1473 (9th Cir.1993) (emphasis in original). Significantly, an "enterprise" may consist entirely of corporations that are also named as defendants. *See River City Mkts., Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1461–62 (9th Cir.1992) (explaining that while "a single individual or entity cannot be both the RICO enterprise and an individual RICO defendant" because "an individual cannot associate or conspire with himself," "[a]ll the circuits that have considered the question have concluded that a plaintiff is free to name all members of an association-in-fact enterprise as individual defendants.")

■ In the instant case, plaintiff identifies Ocwen as "an 'enterprise' within the meaning of 18 U.S.C. § 1961(4)." (SAC ¶ 138.) However, plaintiff fails to plead sufficient facts to identify an enterprise distinct from Ocwen in its role as defendant. Plaintiff asserts that "Ocwen has conducted a mortgage foreclosure enterprise in which the other defendants cooperate and assist in Ocwen's plan to generate unlawful fees and charges and to foreclose on properties where the owners have substantial equity, through fraudulent billings and charges and other fraudulent conduct." (Pls.' Opp. at 18.) While this theory, if supported by factual allegations, might be sufficient to plausibly allege the existence of a RICO enterprise, plaintiff fails to plead any allegations of mail fraud or wire fraud, with the particularity required under Rule 9(b), against any defendant other than Ocwen. Hence, despite her conclusory assertion that the "enterprise thus consists of an association

between Ocwen, MERS, HSBC, Cal–Western Reconveyance, the trustee and York, at the very least," (*Id.*), plaintiff does not support her theory with factual allegations sufficient to state a claim for which relief can be granted. *See Sever*, 978 F.2d at 1534.

Accordingly, defendants' motion to dismiss plaintiffs' twelfth claim for relief is GRANTED with leave to amend.

## L. Intentional Inference with Contractual Relations

In her thirteenth claim, plaintiff alleges that Ocwen intentionally interfered with plaintiff's contractual relations with Fidelity and/or HSBC. (SAC ¶ 147–52.)

■ California courts have long held "that a stranger to a contract may be liable in tort for intentionally interfering with the performance of a contract." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 791 P.2d 587 (1990). "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Id.*

■ Although interference with contractual relations is an intentional tort, "it does not require that the defendant act with specific intent to interfere." *Davis v. Nadrich*, 174 Cal.App.4th 1, 10, 94 Cal. Rptr.3d 414 (2009). Thus, a plaintiff may bring a claim where the defendant "does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action."

*Quelimane Co. v. Stewart Title Guar. Co.,* 19 Cal.4th 26, 56, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998) (quoting Rest.2d Torts § 766, com. j, p. 12).

Here, defendants argue that plaintiff fails to allege that Ocwen had any intent to induce a breach of contract or that HSBC and/or Fidelity breached any contract. (Defs.' Mem. at 16–17.) Defendants argue that plaintiff must allege facts demonstrating that Ocwen "acted with the purpose or design to cause the breach" in order to meet the intentional act requirement. (*Id.* at 17.)

 However, contrary to defendants' assertions, plaintiff may sufficiently state a claim if she alleges that contractual interference was "incidental" to an "independent purpose" of Ocwen but known to Ocwen "to be a necessary consequence" of its actions. *Quelimane,* 19 Cal.4th at 56, 77 Cal.Rptr.2d 709, 960 P.2d 513 (quoting Rest. 2d Torts § 766, com. j, p. 12). Under the liberal notice pleading standards of Rule 8(a), plaintiff satisfies this burden. Plaintiff alleges that if she breached the terms of her agreements with Fidelity and/or HSBC, Ocwen induced the breach by, *inter alia,* failing to credit payments as contractually required, charging fees that exceeded contractually specified amounts, and by instructing plaintiff to make payments on terms that failed to prevent the foreclosure sale of her home. (SAC ¶ 150.) Thus, plaintiff sufficiently states a claim for interference with contractual relations.

Accordingly, defendants' motion to dismiss plaintiff's thirteenth claim for relief is DENIED.

### M. Negligent Interference with Contractual Relations

 In her fourteenth claim for relief, plaintiff asserts a claim for "negligent interference with contractual relations." (SAC ¶¶ 153–55.) However, California law does not recognize a cause of action for negligent interference with contractual relations, *Davis,* 174 Cal.App.4th at 9, 94 Cal.Rptr.3d 414, as plaintiff herself acknowledges in her opposition to defendants' motion to dismiss. (Pls.' Opp. at 19).

Accordingly, defendants' motion to dismiss plaintiff's fourteenth claim for relief is GRANTED without leave to amend.

## II. Motion to Strike

Defendants also move pursuant to Federal Rule of Civil Procedure 12(f) to strike plaintiff's claims for quiet title, breach of third party beneficiary obligations, intentional interference with contractual relations, and negligent interference with contractual relations. (Mot. to Strike, filed June 4, 2010, at 2.) In addition, defendants move to strike plaintiff's prayer for punitive damages in connection with her fraud claim. (*Id.*)

### A. Claims

Defendants argue that plaintiff failed to comply with the requirements of Rule 15(a)(2) by not securing leave from the court before amending her quiet title claim to add HSBC as a defendant and adding her claims for breach of third party beneficiary obligations and intentional and negligent interference with contractual relations. (*Id.*)

While as a technical matter defendants are correct that plaintiff's amendments were not contemplated within the leave to amend granted by the court's prior Order, a "court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). Consequently, the court construes plaintiff's opposition to defendants' motion to strike as a motion for leave to amend and grants the motion.

## B. Punitive Damages

Finally, defendants assert that the SAC fails to plead sufficient facts to warrant the award of punitive damages. (Mot. to Strike at 2.) Under California Civil Code § 3294, punitive damages are available where a plaintiff proves that a defendant is guilty of fraud. *See, e.g., Scott v. Phoenix Schools, Inc.,* 175 Cal.App.4th 702, 715–16, 96 Cal.Rptr.3d 159 (2009) (explaining that "Punitive damages are appropriate if the defendant's acts are reprehensible, fraudulent or in blatant violation of law or policy.") (quotation and citation omitted).

Here, as set forth *supra,* plaintiff sufficiently alleges a claim for fraud. Furthermore, plaintiff argues that defendants' conduct constituted "an unlawful, deceptive, systematic and continuous scheme and pattern of fraud, wrongful conduct and abuse." (SAC ¶ 21.) Thus, plaintiff alleges acts by defendants that are reprehensible, fraudulent, and in violation of law. Hence, defendants' argument that plaintiff fails to plead sufficient allegations to support punitive damages is without merit.

Accordingly, defendants' motion to strike is DENIED.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part as follows:

(1) Defendants' motion to dismiss plaintiffs' second claim for relief for quiet title is DENIED.

(2) Defendants' motion to dismiss plaintiffs' fourth claim for relief for breach of contract is DENIED as to the allegations concerning the deed of trust and GRANTED with leave to amend as to all other alleged breaches of contract.

(3) Defendants' motion to dismiss plaintiffs' fifth claim for relief for breach of third party beneficiary obligations is DENIED.

(4) Defendants' motion to dismiss plaintiffs' sixth claim for relief for fraud is DENIED.

(5) Defendants' motion to dismiss plaintiffs' seventh claim for relief for violations of California's Unfair Competition Law is DENIED as to defendant Ocwen and GRANTED with leave to amend as to defendant HSBC.

(6) Defendants' motion to dismiss plaintiffs' eighth claim for relief for violations of California's RFDCPA is DENIED as to the allegations that Ocwen represented that plaintiff would be charged unlawful fees, and GRANTED with leave to amend as to all other allegations.

(7) Defendants' motion to dismiss plaintiffs' ninth claim for relief for unjust enrichment is DENIED.

(8) Defendants' motion to dismiss plaintiffs' tenth claim for relief for breach of fiduciary duty is GRANTED without leave to amend.

(9) Defendants' motion to dismiss plaintiffs' eleventh claim for relief for negligence is GRANTED without leave to amend.

(10) Defendants' motion to dismiss plaintiffs' twelfth claim for relief for violation of RICO is GRANTED with leave to amend.

(11) Defendants' motion to dismiss plaintiffs' thirteenth claim for relief for intentional interference with contractual relations is DENIED.

(12) Defendants' motion to dismiss plaintiffs' fourteenth claim for relief for negligent interference with contractual relations is GRANTED without leave to amend.

Defendants' motion to strike is DENIED.

Plaintiff is granted fifteen (15) days from the date of this order to file a third amended complaint in accordance with this order. Defendants are granted thirty (30) days from the date of service of plaintiff's third amended complaint to file a response thereto.

IT IS SO ORDERED.