[No. B202868. Second Dist., Div. Three. Apr. 27, 2009.]

JOSEPH DANIEL DAVIS, Plaintiff and Appellant, v.
JEFF IRA NADRICH et al., Defendants and Respondents.

---

COUNSEL

Joseph Daniel Davis and Charlotte E. Costan for Plaintiff and Appellant.

Law Offices of John C. Heubeck and John C. Heubeck for Defendants and Respondents.

---

OPINION

**ALDRICH, J.—**

## INTRODUCTION

Plaintiff and appellant Joseph Daniel Davis (Davis), an attorney, was a partner in a law firm with John C. Heubeck. On appeal, Davis claims that defendant and respondent Jeff Ira Nadrich interfered with the Davis/Heubeck partnership agreement by referring cases to Heubeck, personally. Davis appeals from a summary judgment entered in favor of Nadrich and in favor of defendants and respondents Randal Neal Cohen (Cohen) and the law firm of Nadrich & Cohen, LLP. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[1]

Davis's law practice primarily focused on asbestos litigation. He was in a law partnership named Davis & Thomas. While that firm was winding down, Davis entered into a 1999 oral agreement with Heubeck. Heubeck and Davis

---

[1] Following the usual standard of review from the granting of a summary judgment, we view all conflicting facts in favor of Davis, the party who opposed the motion for summary judgment. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

formed the law partnership of Davis & Heubeck to represent plaintiffs in asbestos-related or toxic tort litigation. Davis and Heubeck did not agree to remain partners until the expiration of a definite term or the completion of a particular undertaking. Each partner had the right to end the partnership and to begin the period of winding up the firm. The agreement provided that Davis was to be the trial attorney, receiving 60 percent of the profits. The scope of the Davis & Heubeck partnership did not include the unfinished business from Davis & Thomas. Eventually, Davis & Heubeck leased space at 10100 Santa Monica Boulevard, Los Angeles, California.

By 2003, the firm of Davis & Heubeck was no longer making any money.

Heubeck claimed that in early 2004 there was a decision to dissolve Davis & Heubeck. Davis disputed that claim and stated that there was no dissolution decision until May 11, 2005. In 2004, Heubeck did not notify the State Bar that he had begun to practice under his own name and he did not list his personal firm (the Law Offices of John C. Heubeck) on the directory at the building located on Santa Monica Boulevard.

Heubeck met Nadrich sometime in mid-2004. Nadrich wanted to refer asbestos and toxic tort cases to Heubeck, individually, and not to the Davis & Heubeck firm. Based upon Nadrich's opinion of Davis, Nadrich told Heubeck that he had no intention of referring any cases to Davis or to any firm with which Davis was associated. Thereafter, Nadrich referred cases to Heubeck, individually, and not to the firm of Davis & Heubeck.

Davis has never met nor spoken to Nadrich. Neither Davis nor Davis & Heubeck was ever retained by any client to prosecute any case referred by Nadrich to Heubeck. Neither Davis nor Davis & Heubeck has executed any retainer agreement for any case referred by Nadrich to Heubeck. Neither Davis nor Davis & Heubeck was the attorney of record in any case referred by Nadrich to Heubeck. Neither Davis nor Davis & Heubeck obtained written consent from any client to share attorney fees earned on the Nadrich-referred cases. Davis knew, and did not protest, that the Nadrich-referred cases were being prosecuted by the Law Offices of John C. Heubeck.

After Heubeck began to litigate cases referred to him from Nadrich, Heubeck remained in the same office space he shared with Davis. Heubeck used Davis & Heubeck office personnel and facilities to prosecute the Nadrich referrals. According to Davis, he was to receive a percentage of the Nadrich-referred cases.

On May 11, 2005, Heubeck discovered that Davis had taken a significant amount of money from a Davis & Heubeck account. Heubeck confronted Davis, demanded the return of the money, and left the offices he had been sharing with Davis. In May 2005, Heubeck notified Davis & Heubeck's employees and clients that Davis & Heubeck was dissolving.

Davis has never talked to Cohen. The law firm of Nadrich & Cohen, LLP, is a limited liability partnership. It was formed on January 1, 2005, and did not exist in the spring of 2004. Cohen was not privy to any conversations between Heubeck and Nadrich regarding case referrals. Cohen has no knowledge of the circumstances under which Nadrich referred cases to Heubeck and has no knowledge of the terms of such referrals. The only reason Davis named Cohen as a defendant in this lawsuit was because Cohen was a partner with Nadrich, and Davis believes that Cohen has assets beyond those of the firm, Nadrich & Cohen.

2. *Procedure.*

On July 19, 2005, Davis filed the instant lawsuit against Heubeck, Nadrich, Cohen, and Nadrich & Cohen, LLP. Davis's November 30, 2005, first amended complaint alleged six causes of action. Davis alleged that pursuant to a December 1999 oral contract he formed a partnership with Heubeck to carry on the practice of law representing plaintiffs regarding asbestos-related injuries. Davis further alleged the following: On May 11, 2005, Heubeck breached the oral contract by repudiating the partnership agreement and denying Davis his interest in certain partnership cases. On that date, Davis discovered Heubeck's breach of fiduciary duties. Commencing in 2005, Heubeck failed to perform his professional obligations, did not contribute towards partnership expenses, and left the space he had shared with Davis to open his own office. Heubeck took "certain partnership asbestos cases [and] wrongfully converted attorneys' fees from those cases to his own uses." As to Heubeck, Davis alleged breach of contract, breach of fiduciary duty, constructive fraud, and accounting.

Only the fifth and sixth causes of action were alleged against Nadrich, Cohen, and Nadrich & Cohen.

The fifth cause of action was titled "intentional interference with economic relationship." It alleged that "Nadrich, Cohen and Nadrich & Cohen, LLP knew of the economic relationship (contract) between [Davis] and Heubeck for the prosecution and handling of asbestos-related personal injury cases.

[¶] . . . [U]nknown to [Davis], but [within] the last 12 months, defendants Nadrich, Cohen and Nadrich & Cohen, LLP met with Heubeck. Defendants . . . falsely represented that [Davis] would not pay referral fees earned from asbestos-related cases, all with the intent to harm [Davis] financially and to induce Heubeck to breach his contract with [Davis] in order to accept the asbestos-related personal injury referrals from Nadrich, Cohen and Nadrich & Cohen, LLP. Under this arrangement Nadrich, Cohen and Nadrich & Cohen, LLP were able to obtain greater referral fees from Heubeck alone than they would have from Davis & Heubeck. Heubeck succumbed to the inducement of the defendants . . . and breached his contract with Davis. [¶] . . . [¶] . . . As a proximate result of the intentional conduct of Nadrich, Cohen and Nadrich & Cohen, LLP, [Davis] has suffered damages in the form of lost attorney's fees . . . . [¶] . . . Nadrich, Cohen and Nadrich & Cohen, LLP's actions were undertaken with oppression, fraud, and malice and therefore [Davis] is entitled to an award of exemplary and punitive damages . . . ."

The sixth cause of action was labeled "negligent interference with economic relationship." It alleged that "unknown to [Davis], but [within] the last 12 months, defendants Nadrich, Cohen and Nadrich & Cohen, LLP met with Heubeck. Defendants . . . negligently represented that [Davis] would not pay referral fees earned from asbestos-related cases. Said negligent representation induced Heubeck to breach his contract with [Davis] in order to accept asbestos-related personal injury referrals from Nadrich, Cohen and Nadrich & Cohen, LLP. Under this arrangement, Nadrich, Cohen and Nadrich & Cohen, LLP were able to obtain greater referral fees from Heubeck alone than they would have from Davis & Heubeck . . . . Heubeck succumbed to the inducement of [Nadrich] and breached his contract with Davis. [¶] As a proximate result of the negligent representations of Nadrich, Cohen and Nadrich & Cohen, LLP, [Davis] has suffered damages in the form of lost attorney's fees . . . ."

Nadrich, Cohen, and Nadrich & Cohen, LLP, moved for summary judgment. The declarations of Nadrich, Heubeck, and Cohen were attached.

In opposing the motion, Davis noted that Nadrich had refused to appear for his deposition. However, Davis did *not* ask for a continuance so that Nadrich's deposition could be taken.

In ruling on the summary judgment motion, the trial court noted that Davis had *not* requested a continuance, nor had Davis specified any vital evidence that could be obtained through discovery. The trial court granted the motion

and judgment was entered in favor of Nadrich, Cohen, and Nadrich & Cohen, LLP. In rendering its ruling, the trial court sustained most of Nadrich's objections to Davis's declaration. In particular, the trial court sustained the objection to Davis's statement that the Davis/Heubeck partnership "was to last at least through the expiration of our 7 year lease in September 2007." This ruling was based upon the fact that Davis had made contrary statements in discovery, i.e., Davis had admitted that he and Heubeck had *not* agreed to remain partners until the expiration of a definite term. Davis appeals from the judgment.

Heubeck also sought summary judgment. The trial court denied the motion as to Heubeck, and the case against Heubeck proceeded to trial.

## DISCUSSION

### 1. *Burden of review on summary judgment.*

"A defendant moving for summary judgment bears the burden of showing that a cause of action has no merit because plaintiff cannot establish an element of the claim or because defendant has a complete defense. If the defendant makes this showing, the burden then shifts to the plaintiff opposing the summary judgment motion to establish that a triable issue of fact exists as to these issues. (*Saelzler v. Advanced Group 400*[, *supra*,] 25 Cal.4th [at p.] 768 . . . ; Code Civ. Proc., § 437c, subds. (a), (p)(2).)" (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 741 [74 Cal.Rptr.3d 715].)

" 'Summary judgment is properly granted where there are no triable issues of fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision granting a summary judgment de novo. In doing so, we liberally construe all conflicting facts in the light most favorable to the party opposing the motion. [Citations.]' (*Nielsen v. Beck* (2007) 157 Cal.App.4th 1041, 1048 [69 Cal.Rptr.3d 435].)" (*Baudino v. SCI California Funeral Services, Inc.* (2008) 169 Cal.App.4th 773, 781 [87 Cal.Rptr.3d 147].)

Summary judgment motions are to be denied and a continuance of the hearing on the motion granted if a party requests a continuance and demonstrates by affidavit that there is reason to believe outstanding discovery exists that is essential to resist the motion. (Code Civ. Proc., § 437c, subd. (h); *Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 253–254 [19 Cal.Rptr.3d 810]; *Ace American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1023 [18 Cal.Rptr.3d 1].)

## 2. *Preliminary matters.*

Before we discuss the main arguments raised by Davis on appeal, we conclude that Davis is foreclosed from contending that the trial court should have continued the hearing on the summary judgment motion so that discovery could have been conducted. Davis made no continuance request in the trial court. Davis contends the trial court should have continued the hearing, even without a specific request to do so. However, Davis also failed to provide the trial court with sufficient information to warrant a "mandatory continuance." (See Code Civ. Proc., § 437c, subd. (h); *Cooksey v. Alexakis, supra,* 123 Cal.App.4th at p. 254 [requests to continue summary judgment motion must be made in the trial court based upon submission of affidavit showing essential facts to be obtained]; *Ace American Ins. Co. v. Walker, supra,* 121 Cal.App.4th at p. 1023.)[2] Because Davis never requested a continuance and did not provide reasons that would support such a request, the trial court did not err in failing to continue the hearing on the summary judgment motion.

We note that Heubeck is not a party to this appeal and the jury's factual findings as to the liability of Heubeck rendered *after* the summary judgment against Nadrich, Cohen, and Nadrich & Cohen was entered are not relevant to our analysis.[3] We reject any suggestion made by Davis to the contrary.

Additionally, Davis admitted that the only reason he named Cohen as a defendant was because Cohen was a partner with Nadrich, and Davis believed that Cohen had assets beyond those of the firm, Nadrich & Cohen. On appeal, Davis makes no arguments as to why the summary judgment must be reversed as to Cohen or the law firm of Nadrich & Cohen. Rather, Davis inartfully groups together all respondents by referring to them jointly as "Nadrich." Further, Davis does not present any factual or legal arguments as to why Cohen or the firm Nadrich & Cohen could be liable, even if we reversed as to Nadrich, personally. Thus, we need not discuss Cohen or the firm Nadrich & Cohen and conclude that the trial court properly granted summary judgment to these respondents.

We now turn to the merits of the case and limit our discussion as to whether Davis can go forward with his lawsuit against Nadrich, individually.

[2] On appeal, Davis admits he did not provide the trial court with sufficient information to warrant a mandatory continuance. And, Nadrich states that he was eventually deposed, a fact Davis admits in his reply brief.

[3] In the trial against Heubeck, the jury found that the Davis/Heubeck partnership ended in May 2005. Even if we were bound by this finding, as we discuss below, Davis has not shown that the summary judgment entered against him should be reversed.

### 3. *Davis has not raised any triable issues of fact.*

There are three separate groups of torts that are relevant to the discussion. Davis labeled his two causes of action against Nadrich as intentional and negligent interference with *prospective economic relations.* On appeal, Davis does *not* address these causes of action. Rather, Davis argues we should not rely on the title he assigned to his causes of action, but rather, consider the substance thereof.[4] On appeal, Davis switches gears and states that the "crux of Davis's complaint as to Nadrich was that *he interfered* with the Davis-Heubeck contractual relationship by diverting partnership business solely to Heubeck during the partnership existence." (Italics added.) Davis asserts there are triable issues of fact on his fifth and sixth causes of action for intentional and negligent *interference with contractual relations.*

Davis's switching theories does not save his case.

First, Davis's sixth cause of action fails as a matter of law.

In California there is no cause of action for *negligent* interference with contractual relations. While there exists a cause of action for negligent interference with *prospective* economic advantage (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60]), the California Supreme Court in *Fifield Manor v. Finston* (1960) 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073], has rejected a cause of action for negligent interference with contract.

"In *Fifield Manor* v. *Finston*[, *supra*,] 54 Cal.2d 632 . . . , the California Supreme Court noted: '[W]ith the exception of an action by the master for tortious injuries to his servant, thus depriving the master of his servant's services, which traces back to medieval English law [citations], the courts have consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties or renders its performance more expensive or burdensome. [Citations.]' (*Id.* at p. 636.)" (*LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 349 [60 Cal.Rptr.2d 539].) Although some may question the continuing validity of *Fifield* "in light of the California Supreme Court's recognition in *J'Aire* [*Corp. v. Gregory,*] *supra,* 24 Cal.3d 799 of a cause of action for negligent interference with prospective economic advantage, the Supreme Court has yet to disapprove [*Fifield*]." (*LiMandri v. Judkins, supra,* at p. 349.) Because the Supreme Court has never overruled *Fifield,* we are

---

[4] Davis states he has abandoned all claims that Nadrich *induced* a breach of contract.

bound by it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)[5]

Thus, the only argument remaining is Davis's contention that he has raised a triable issue of fact with regard to the tort of interference with contractual relations. This argument is unpersuasive.

■ The tort of intentional interference with contractual relations requires " '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' [Citation.]" (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513]; see also *Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148 [17 Cal.Rptr.3d 289, 95 P.3d 513]; *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 237–238 [26 Cal.Rptr.3d 798].) While this is an intentional tort, it does not require that the defendant act with specific intent to interfere. (*Quelimane Co. v. Stewart Title Guaranty Co., supra,* at p. 56.) The tort will apply if the actor "knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies . . . to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." (*Ibid.*; see also *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1155–1156 [131 Cal.Rptr.2d 29, 63 P.3d 937].)

■ Davis has not raised any triable issues of fact with regard to a possible cause of action for interference with contract because he has offered no evidence that his contract with Heubeck precluded either partner from accepting individual referrals. Thus, Davis cannot claim that when Nadrich offered cases to Heubeck, Nadrich interfered with the Davis/Heubeck contract. Simply put, Davis has not brought forth any facts to show that there was an actual breach of his partnership contract with Heubeck and therefore, cannot prove a cause of action against Nadrich for interference with that contract. We could end our analysis here, but we will also demonstrate below that none of the arguments raised by Davis has merit.

Davis cannot prove the tort of interference with contract because he has not brought forth any facts to show that Nadrich was sufficiently aware of the

---

[5] Even the exception discussed in *Fifield Manor v. Finston, supra,* 54 Cal.2d 632 no longer applies. The exception for an action by the master for tortious injuries to his servant is no longer the law in California. (*I. J. Weinrot & Son, Inc. v. Jackson* (1985) 40 Cal.3d 327, 332–341 & fn. 8 [220 Cal.Rptr. 103, 708 P.2d 682], superseded by statute on other grounds as stated in *County of Monterey v. Mahabir* (1991) 231 Cal.App.3d 1650, 1652–1653 [282 Cal.Rptr. 924].)

details of the Davis/Heubeck partnership contract to form an intent to harm it. Rather, the only facts relevant to this point are contained in the declarations of Nadrich and Heubeck, submitted in support of the summary judgment motion. They declared that Heubeck had informed Nadrich that Davis & Heubeck was in dissolution, but remained open to wind up its existing cases. Nadrich and Heubeck further declared Heubeck had informed Nadrich that he had begun his own practice and was accepting cases apart from Davis & Heubeck, a fact of which Davis was aware. Further, Heubeck declared that Davis had no financial interest in the cases referred by Nadrich. Thus, the uncontroverted facts demonstrate that Nadrich cannot be liable for interference with the Davis/Heubeck contract because he had no knowledge that Davis & Heubeck was a viable partnership, accepting cases.

Davis asserts that Nadrich had no right to rely upon Heubeck's statements that the Davis & Heubeck partnership was dissolving. Davis claims Nadrich had a duty to investigate further to ascertain if there was a partnership agreement between Davis and Heubeck. First, these arguments are not viable because there are no such allegations in the operative complaint. Second, even if Davis had made such allegations, and assuming Nadrich had a duty to investigate, Nadrich discharged that duty by talking to Heubeck, the person who had knowledge of the terms of the Davis/Heubeck contract. (*Bank of America v. Greenbach* (1950) 98 Cal.App.2d 220, 234 [219 P.2d 814] ["when a fact is peculiarly within the knowledge of the person making the representation and not within the knowledge of the person to whom it is made, the latter has the right to rely upon the representations of the former respecting such fact"].) Heubeck told Nadrich that Davis & Heubeck was dissolving and Davis has presented no facts that would have led Nadrich to disbelieve Heubeck's statements.

In an effort to raise a triable issue of fact with regard to Nadrich's knowledge of the Davis/Heubeck partnership contract, Davis points to a November 30, 2004 letter Nadrich sent to Heubeck. In this three-line communication, Nadrich requested that Heubeck provide a list of the cases that had been referred to Heubeck, along with confirmation of the referral arrangement. The letter was addressed to Heubeck with the mailing address of "Davis & Heubeck, LLP, 10100 Santa Monica Blvd. . . ." This letter does not raise a triable issue of fact. The letter is consistent with Nadrich's understanding that Heubeck continued to work from the same offices he shared with Davis and that Davis & Heubeck continued to exist through the winding-up process. It also does not fill the void left by Davis's failure to provide any facts to prove that his contract with Heubeck precluded either partner from accepting individual referrals.

In an effort to prove that Nadrich was aware of the Davis/Heubeck contract, Davis also points to a fee-sharing agreement typed on Davis &

Heubeck letterhead authorizing a split of attorney fees between Davis & Heubeck, Nadrich & Associates, and Nadrich on a specific lawsuit, upon the consent of the client. Davis suggests this document provides irrefutable evidence that Nadrich knew that Davis & Heubeck had not been dissolved. First, this document proves nothing, as Davis admitted that Davis & Heubeck had not obtained written consent from any client to share fees. Second, it is a document with no significance. It is unsigned and there is no information as to who wrote it, or when it was drafted. Thus, it is totally without evidentiary value and cannot provide assistance to Davis.[6]

Therefore, Davis has not presented any evidence that might suggest Nadrich was aware of the Davis/Heubeck contract.

Davis also claims there are triable issues of fact with regard to whether the Nadrich cases were actually the business of Davis & Heubeck, because Heubeck's secretary declared that when she asked Heubeck "about [the Nadrich-referred cases, Heubeck] told [her] that he and Mr. Davis . . . would be the trial attorney on the Nadrich referral cases. As far as [she] knew, the Nadrich referrals were going to be handled the same way as all other [Davis & Heubeck] cases." Davis misses the point. Even if the secretary's statements show that Davis Heubeck was an ongoing partnership, the issue is whether Nadrich intentionally interfered with the partnership contract. The secretary's statements do not demonstrate that when Nadrich referred cases to Heubeck, *Nadrich* knew that Davis and Heubeck continued to have a partnership relationship that was to encompass all cases handled by either Davis or Nadrich. The secretary's statements do not demonstrate that *Nadrich* understood the parameters of the Davis/Heubeck contract.

On review from the motion for summary judgment, Davis has not demonstrated that his contract with Heubeck precluded Heubeck from accepting cases personally. Thus, any act by Nadrich in referring cases to Heubeck alone cannot support a cause of action by Davis against Nadrich for interference with the Davis/Heubeck contract. Additionally, even if Davis could go forward without showing the terms of his contract with Heubeck, the facts do not demonstrate that he could meet his burden of proof by proving all elements of the tort of interference with contract.

The trial court did not err in granting summary judgment to Nadrich, Cohen, and Nadrich & Cohen.

---

[6] At oral argument Nadrich's counsel lodged a document that would have shown that the trial court sustained his objection to exhibit I. Exhibit I consisted of the November 30, 2004 letter and the unauthenticated fee agreement, both discussed above. As demonstrated by our discussion, even if the trial court had considered exhibit I, the court would have properly entered summary judgment for Nadrich.

## DISPOSITION

The summary judgment is affirmed. Appellant Joseph Daniel Davis is to pay all costs on appeal.

Klein, P. J., and Croskey, J., concurred.

On May 21, 2009, the opinion was modified to read as printed above.