Filed 12/8/15  Ball v. Saurman CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| J. KIELY BALL et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>SANDEE SAURMAN,<br><br>    Defendant and Appellant. | 2d Civil No. B258634<br>(Super. Ct. No. 56-2012-<br>00418245-CU-DF-VTA)<br>(Ventura County) |

Plaintiffs J. Kiely Ball and Auditone Hearing Aids, Inc. (Auditone) sued defendant Sandee Saurman for libel per se and related causes of action after she published critical complaints about Ball and his hearing aid dispensaries on two Internet websites and in a letter to members of a national hearing loss association. Saurman appealed the trial court's denial of her motion to strike the complaint under the anti-strategic lawsuit against public participation (anti-SLAPP) statute, Code of Civil Procedure section 425.16.[1]  We determined that plaintiffs' claims arose from protected activity and remanded the matter to the trial court to decide whether

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

plaintiffs had demonstrated a probability of prevailing on their claims. (*Ball v. Saurman* (Sept. 17, 2013, B244750) [nonpub. opn.].)

On remand, the trial court granted the motion to strike the cause of action for fraud/deceit and allowed the action to proceed as to the seven remaining claims. We affirm the decision to strike the fraud/deceit claim and to deny the motion to strike the libel, negligence and unfair business practices causes of action, but conclude plaintiffs have not demonstrated a probability of prevailing on their claims for intentional and negligent interference with economic relationship and invasion of privacy. We reverse the order denying the motion to strike those claims and remand with instructions.

FACTS AND PROCEDURAL BACKGROUND

Saurman is a doctor of audiology and a licensed hearing aid dispenser who does not dispense or sell hearing aids. Ball is a licensed hearing aid dispenser in eight states, including California, but is not an audiologist. He is the president of Auditone, which he incorporated in July 2010. Ball was the owner and operator of Advanced Hearing Centers, Inc. (Advanced Hearing), which he sold to Michael Owen in April 2009.

In March 2009, Len Rossman asked Saurman to help him with the hearing aids he had purchased from Ball. Rossman claimed that Ball had refused to refund his money. Saurman telephoned Ball and demanded a refund on Rossman's behalf. According to Saurman, Ball laughed at her. Saurman and Rossman then went to Advanced Hearing, where one of Ball's employees refused their demand for a refund.

Approximately a week later, Saurman picketed in front of Ball's business. Ball subsequently gave Rossman a refund, but required Rossman to sign a document releasing all claims against Ball and promising that no one he knew would come within 300 yards of Ball's businesses.

After Saurman assisted Rossman with his refund, other people contacted Saurman regarding hearing aids purchased from Advanced Hearing. Saurman returned to picketing at Advanced Hearing and filed a consumer complaint against Ball with the California Attorney General's office. She also filed multiple anonymous complaints with the California Department of Consumer Affairs. In one of the complaints, Saurman discussed Rossman's experience with Ball, and stated that "Ball should lose his California state hearing aid dispensing license." Saurman also created a Facebook webpage called "Fight J. Kiely Ball Hearing Aid Dispenser" and, without his permission, uploaded a picture of Ball to the webpage.

In June 2010, the Speech-Language Pathology and Audiology and Hearing Aid Dispensers Board (Board) filed an accusation seeking to revoke or suspend Ball's hearing aid dispensing license. The accusation, which was based on complaints by five customers, alleged numerous violations of state consumer laws. Ball settled that matter in December 2011. He stipulated to the revocation of his hearing aid dispenser license with the revocation stayed during a four-year probationary period.[2]

In October 2011, Saurman wrote a letter to the chapter leaders of the Hearing Loss Association of America (HLAA) and mailed copies to Ball's clients. The letter discussed Saurman's negative experiences with Ball and advised that the State of California was seeking to revoke Ball's dispensing license. The letter further stated, inter alia, that Ball "does not honor hearing aid returns and has illegal contracts"; that "the LA City attorney was going to press charges"; that the State of California is "trying to get a criminal trial on elder abuse on [Ball];" that Ball obtained money through forgery and that Saurman is a "prime witness" in the trial of "[S]tate of [C]alifornia *vs.* Kiely Ball." The letter concluded: "I am adamant that the

---

[2] We grant Saurman's request to take judicial notice of the accusation filed with the Board and the stipulated decision and order resolving the matter. (See Evid. Code, §§ 452, 459.)

public, hearing impaired and elderly are protected.  Please pass this information on to your members."

On January 2, 2012, shortly after Ball had settled the accusation brought before the Board, Saurman (using the pseudonym Jacey James) posted a complaint on the "Ripoff Report" website.  The Internet posting stated that Ball and Auditone have illegal contracts and do not honor state laws, that Ball's former employees agree with Saurman and that "the State of California . . . has NINE accusations against his license and there is supposed to be a trial against his license." Saurman's posting further stated that Ball instructs his employees to "never" give a refund.

Plaintiffs filed a complaint against Saurman for (1) libel per se, (2) negligence, (3) intentional interference with economic relationship, (4) negligent interference with economic relationship, (5) invasion of privacy - false light, (6) invasion of privacy - misappropriation of likeness, (7) unfair business practices and (8) fraud/deceit.  The claims are based primarily upon Saurman's publication of allegedly false statements in the letter to the HLAA and on the Facebook and Ripoff Report websites.  Plaintiffs allege that clients cancelled contracts with Auditone as a result of Saurman's false and misleading comments and that a local newspaper has refused Auditone's advertisements because of her actions.

Saurman filed a special motion to strike the complaint pursuant to section 425.16.  The trial court sustained most of the objections to Saurman's evidence and determined she had not met her initial burden of demonstrating that any of the allegedly defamatory statements constituted constitutionally protected activity. We reversed that decision, concluding that Saurman had established that plaintiffs' claims arose from protected activity under section 425.16, subdivisions (e)(3) and (e)(4).  We remanded the matter to the trial court to consider whether plaintiffs had demonstrated a probability of prevailing on the merits of their causes of action. (*Saurman v. Ball*, *supra*, B244750.)

4

Following the submission of supplemental briefing and evidence, the trial court sustained all of plaintiffs' objections to Saurman's supplemental evidence and denied the anti-SLAPP motion as to the first cause of action for libel per se. It determined plaintiffs had demonstrated a probability of prevailing on at least one of the allegedly libelous statements attributed to Saurman, and that she had failed to submit "sufficient evidence to overcome plaintiff's prima facie showing of malice, damages and other elements of a libel cause of action."

The trial court's order did not address the second through eighth causes of action in plaintiffs' complaint. After Saurman objected, the trial court summarily denied the motion as to the second through seventh causes of action, finding that plaintiffs had sustained their burden of demonstrating that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment. The court granted the motion as to the eighth cause of action for fraud/deceit. It explained: "Plaintiffs do not claim to have personally relied upon any of the allegedly fraudulent or deceitful statements made by the Defendant. Plaintiffs suggest that such personal reliance is not required under *Randi W. v. Muroc Joint Unified School District* (1997) 14 Cal.4th 1066 [*Randi W.*]. Unlike in *Randi W.*, plaintiffs are not alleging that they suffered physical injury as a result of the allegedly fraudulent or deceitful statements made to third parties."

Subsequently, the trial court revised its ruling to clarify that while Ball has generally alleged physical injury, "he has not done so with any specificity. In addition, he has not provided any convincing evidence to support these allegations. Unlike in *Randi W.*, Ball has not alleged and certainly has not submitted any reasonable evidence demonstrating that defendant's alleged statements involved an unreasonable risk of physical harm to him."

Saurman appeals the portion of the order denying her motion to strike the first through seventh causes of action. Plaintiffs also appeal, arguing the trial court erred by granting the motion as to the eighth cause of action.

DISCUSSION

A. *The Anti-SLAPP Statute and Standard of Review*

To assess whether dismissal is required under section 425.16, the court first must determine if the lawsuit falls within the scope of the anti-SLAPP statute. (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1476.) A cause of action is governed by this statute if it arose from activities that were in furtherance of the moving party's free speech or petition rights. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) We have already determined that Saurman met her burden of demonstrating that the claims arose from protected activity. (See *Equilon Enterprises*, at p. 67.) The burden therefore shifts to plaintiffs to demonstrate "a probability of prevailing" on their claims. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)

The "burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.) The plaintiff need only show a "minimum level of legal sufficiency and triability" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5), or a case of "'minimal merit.'" (*Navellier*, *supra*, 29 Cal.4th at p. 95, fn. 11; *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 824-825, disapproved on another ground as stated in *Equilon Enterprises*, *supra*, 29 Cal.4h at p. 68, fn. 5.)

Our review of the trial court's order on an anti-SLAPP motion is de novo. (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 214.) Rulings on evidentiary objections are reviewed for abuse of discretion. (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1348, fn. 3.) If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the

6

correctness of the grounds on which the lower court reached its conclusion. (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573.)

### B. *Saurman's Appeal*

Saurman challenges the trial court's denial of the motion to strike the causes of action for (1) libel per se, (2) negligence, (3) intentional interference with economic relationship, (4) negligent interference with economic relationship, (5) invasion of privacy - false light, (6) invasion of privacy - misappropriation of likeness and (7) unfair business practices. Plaintiffs contend the trial court properly denied the motion as to these claims but address only the libel claim.[3] We uphold the decision to deny the motion as to the libel, negligence and unfair business practices claims, but conclude plaintiffs did not meet their burden of establishing a probability of prevailing on the other claims.

### (1) *Libel Per Se*

""Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." [Citation.]' . . . Defamatory publications that are made 'by writing, printing, picture, effigy, or other fixed representation to the eye,' are considered libel. (Civ. Code, § 45.) [¶] . . . [¶] Where a libelous statement 'is defamatory *on its face*, it is said to be libelous per se, and actionable without proof of special damage. . . .' [Citations.]" (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 382.) "[F]alse statements charging the commission of crime or tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable professional conduct are defamatory per se. [Citations.]" (*Id.* at p. 383.)

---

[3] Plaintiffs' briefs incorporate their brief in the earlier appeal, but that brief also does not address most of the contentions raised by Saurman in this appeal. Consequently, we asked plaintiffs' counsel to be prepared to address those contentions at oral argument.

We agree with the trial court that plaintiffs have satisfied their minimal burden to show a probability of prevailing on their claim of libel per se. As noted above, the letter to the HLAA contains many factual statements that were alleged to be false, including accusing plaintiffs of (1) not "honor[ing] hearing aid returns," (2) having "illegal contracts," (3) obtaining "money through forgery" and (4) being subject to "charges" by the Los Angeles City Attorney. Because a reasonable trier of fact could conclude these statements, when taken in context, "imply a provably false factual assertion" (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 902 (*Wilbanks*), plaintiffs made a prima facie showing the defamatory statements are false for purposes of their libel claim.

Plaintiffs introduced evidence that Ball has issued almost $2 million in refunds to customers between 2006 and 2010. The statement that plaintiffs forged a customer's signature to obtain money is proven false by Saurman's own witness, Hal Levin, who admitted "there was no forgery." Plaintiffs also introduced evidence that the Los Angeles City Attorney's Office was never going to press charges. That Saurman submitted evidence suggesting some of the factual assertions are true and thus not actionable does not overcome the showing of falsity based on the evidence, if credited, submitted by plaintiffs. The fact that a published statement "contain[s] some truths" also does "not insulate the publication as a whole from a claim of defamation." (*Wilbanks*, *supra*, 121 Cal.App.4th at pp. 901-902.) Similarly, the contention that any such statements merely constitute an "opinion" does not preclude such statements from being actionable. (*Id.* at p. 903 [noting that "'[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact'"].)

Saurman contends that Ball is a limited purpose public figure and, as such, he must establish a probability that he can produce clear and convincing evidence showing the defamatory statements were made with knowledge of their

8

falsity or with reckless disregard of their truth or falsity. (*Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1577-1578 (*Ampex*), citing New *York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279-280.) Saurman introduced evidence, through YouTube videos and Internet websites, that Ball publicly holds himself out as a hearing aid expert. The trial court sustained plaintiffs' objections to this evidence for lack of authentication.

Saurman concedes her evidence was not authenticated, but argues it is properly before us because it is capable of authentication at trial. (*See Fashion 21 v. Coalition for Human Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1147.) This argument ignores the standard of review. While the trial court in *Fashion 21* exercised its broad discretion to consider a single unauthenticated videotape, it does not follow that the trial court in this case abused its discretion by excluding Saurman's unauthenticated evidence. (See *ibid.*) "An appellate court's ruling that a trial court did not abuse its discretion in admitting a certain type of evidence is not authority for the proposition that it is an abuse of discretion to exclude similar evidence in another case." (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1318.)

In any event, even if we were to consider Saurman's evidence, it does not advance her cause. A "limited purpose public figure is an individual who voluntarily injects him or herself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues. [Citations.]" (*Ampex*, *supra*, 128 Cal.App.4th at p. 1577, citing *Gertz v. Robert Welch, Inc*. (1974) 418 U.S. 323, 351.) Thus, to characterize a plaintiff as a limited purpose public figure, the courts consider the following elements: "First, there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants. Second, the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue. In this regard it is sufficient that the plaintiff attempts to thrust him or herself

9

into the public eye. And finally, the alleged defamation must be germane to the plaintiff's participation in the controversy." (*Ampex*, *supra*, at p. 1577.)

Saurman does not identify a public controversy that Ball was attempting to resolve by way of his videos and Internet postings. In other words, there is no evidence that Ball, by marketing his business and holding himself out as a hearing aid expert, thrust himself into the public eye for the purpose of influencing resolution of a public issue. (See *Ampex*, *supra*, 128 Cal.App.4th at p. 1578; see also *Gertz v. Robert Welch, Inc.*, *supra*, 418 U.S. at p. 345 [noting those "classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved" and noting such individuals do so to "invite attention and comment"].) For this reason alone, we conclude Ball was not a limited purpose public figure under the facts of this case. Accordingly, plaintiffs were not required to establish that Saurman acted with actual malice for purposes of satisfying their burden to show a probability of prevailing on their libel claim.

(2) *Second through Seventh Causes of Action*

Saurman contends plaintiffs' second through seventh causes of action are barred by the "single-publication rule" because they are duplicative of plaintiffs' libel claim. (*Christoff v. Nestle USA, Inc.* (2009) 47 Cal.4th 468, 480 (*Christoff*).) Plaintiffs respond that although the single-publication rule prohibits them from filing multiple lawsuits based on the same defamatory publication, it does not prevent them from asserting multiple claims based on different legal theories of recovery. We agree with plaintiffs that the rule does not apply here, but conclude their claims for intentional and negligent interference with economic relationship and invasion of privacy must be stricken on other grounds.

(a) *Single-Publication Rule*

California adopted the Uniform Single Publication Act by enacting Civil Code section 3425.3, which states that "[n]o person shall have more than one

10

cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture.  Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions."  The statute, known as the "single-publication rule . . .[,] is intended to prevent a 'single integrated publication' from resulting in numerous causes of action because the publication is received by a mass audience. [Citation.]"  (*Christoff*, *supra*, 47 Cal.4th at p. 480.)

California courts also invoke the single-publication rule when applying the statute of limitations in actions involving defamation or invasion of privacy. (*Christoff*, *supra*, 47 Cal.4th at p. 481.)  The limitations period in those actions begins to run on the first distribution or publication of the challenged speech, thereby providing repose to the defendants by precluding stale claims based on old publications.  (*Id.* at p. 479; see *Roberts v. McAfee, Inc.* (9th Cir. 2011) 660 F.3d 1156, 1166-1167.)

For example, in *Strick v. Superior Court* (1983) 143 Cal.App.3d 916 (*Strick*), the court dismissed causes of action for fraud and deceit, which were grounded on the same facts as the plaintiff's libel cause of action, because the one-year statute of limitations on the libel claim had expired.  The court explained that the claims "fall within the ambit of 'tortious' conduct within the meaning of [Civil Code] section 3425.3 and [thus] are subject to the one-year statute of limitations as were the first and second causes of action [for libel or slander or invasion of privacy].  To hold otherwise would nullify the clear language and applicability of [Civil Code] section 3425.3 and thwart the policy enunciated by the Legislature concerning *mass communications* . . . ."  (*Id.* at pp. 924-925.)

Saurman asserts that even though plaintiffs' libel claim was filed within the applicable limitations period, the single-publication rule bars them from pleading

11

alternative theories of recovery grounded on the same facts. The Ninth Circuit rejected this argument in *Doe v. Gangland Prods., Inc.* (9th Cir. 2013) 730 F.3d 946, 962-963 (*Gangland*), in which the plaintiff alleged invasion of privacy based on a television broadcast. The court determined the single-publication rule prohibited the plaintiff from "assert[ing] a million claims for public disclosure of private fact based on each audience member who saw his identity," but did "not limit [him] to one theory of recovery or one distinct cause of action or claim for relief." (*Id.* at pp. 962-963; see *M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 637 [permitting plaintiffs to assert one claim for invasion of privacy expressing four different theories and declining to strike plaintiffs' cumulative emotional distress claims].)

"'[T]he purpose of the [single publication] rule is to include in the single suit *all damages* resulting anywhere from the single aggregate publication.' [Citation.]" (*Gangland*, *supra*, 730 F.3d at p. 963.) We agree with *Gangland* that this purpose "would be undermined if a plaintiff is required to choose, at the time of filing his complaint, one single theory to recover all of his damages, without the benefit of any discovery. [Citations.]" (*Ibid.*) Because the rule did not limit plaintiffs to one theory of recovery, the trial court properly declined to strike any of their claims on that basis.

(b) *Intentional and Negligent Interference with*
*Economic Relationship and Negligence*

Saurman contends that regardless of the application of the single-publication rule, the trial court erred by denying their motion to strike plaintiffs' claims for intentional and negligent interference with economic relationship. We agree. The latter claim fails because the tort is not recognized in California. (*Davis v. Nadrich* (2009) 174 Cal.App.4th 1, 9 ["In California there is no cause of action for

12

negligent interference with contractual relations"]; *Walters v. Fidelity Mortgage of California* (E.D. Cal. 2010) 730 F.Supp.2d 1185, 1211 [same].)[4]

The elements of the tort of intentional interference with contractual relations are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. [Citations.]" (*Pac. Gas & Elec. Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126; see *Quelimane Co. Inc. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55.)

The complaint alleges that as a direct result of Saurman's false representations, "several of plaintiff's clients cancelled their contracts or broke off negotiations to purchase hearings aids from plaintiffs." Ball's declaration reiterates this same conclusory allegation, but does not specify any of those "valid contract[s]" or provide proof of Saurman's knowledge of those contracts. As Saurman points out, a general intent to interfere with a plaintiff's business is insufficient to sustain an interference claim. The defendant must be aware of an existing contractual relationship between plaintiff and a third party and take action designed to intentionally induce a breach of that relationship. (See *Davis v. Nadrich*, *supra*, 174 Cal.App.4th at p. 10.) Because the record is devoid of such evidence, plaintiffs have failed to establish a probability of prevailing on that claim.

As for the negligence claim, Saurman argues that plaintiffs have failed to identify any duty that Saurman owed to plaintiffs. She concedes, however, that the

---

[4] At oral argument, plaintiffs argued that they intended to plead intentional and negligent interference with prospective economic advantage instead of interference with existing contractual relations. Our review, however, is limited to the tort alleged in the complaint. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102; see *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 392 [noting the tort of intentional interference with prospective economic advantage and tort of intentional interference with contractual relations are distinct torts].)

duty not to make defamatory statements can reasonably be inferred from the complaint. We conclude plaintiffs have made a sufficient prima facie showing of negligence.

(c) *Invasion of Privacy - False Light*

Plaintiffs' libel cause of action seeks damages for "loss of [Ball's] reputation, shame, mortification, and hurt feelings" and "lost business, including existing clients and prospective business relationships and the probability of future economic benefit." Plaintiff's fifth cause of action for invasion of privacy alleges that Saurman's libelous speech portrayed plaintiffs in a false light and seeks damages arising from the same speech as the libel claim.

A plaintiff may not maintain both a defamation action and a false light action for the same speech because the claims are duplicative. In *Selleck v. Globe International, Inc.* (1985) 166 Cal.App.3d 1123, the court explained that a false light claim must be dismissed if it claims the same harm as a defamation claim: "Plaintiff's second cause of action clearly is based on false light invasion of privacy. It is so labeled and it incorporates all the allegations of the first cause of action (libel) . . . . The general damages sought in the cause of action for libel allegedly result from plaintiff's 'loss of reputation, shame, mortification, hurt feelings, embarrassment and humiliation'; the general damages sought in the cause of action for false light invasion of privacy are based on the identical injuries except that loss of reputation is omitted. Thus, plaintiff's libel claim provides him with a complete remedy for any damages he has suffered by the publication of the article, including damages for injury to his personal feelings which are recoverable in a false light action. Under these circumstances the second cause of action is, in effect, a duplication of the first and hence must be dismissed as surplusage." (*Id.* at p. 1136; see *Kapellas v. Kofman* (1969) 1 Cal.3d 20, 35, fn. 16; *McClatchy Newspapers, Inc. v. Superior Court* (1987) 189 Cal.App.3d 961, 965 ["When an action for libel is alleged, a false-light claim based on the same facts . . . is superfluous and should be dismissed"].)

14

Plaintiffs do not dispute that the substance of their false light action and the damages sought are redundant of their libel claim. In fact, they acknowledge their false light cause of action is "derivative of the defamation claim." Accordingly, plaintiffs have not met their burden of establishing a probability of prevailing on the fifth cause of action.

(d) *Invasion of Privacy - Appropriation of Likeness*

The sixth cause of action for invasion of privacy alleges that Saurman posted a photograph of Ball on her Facebook page. The elements of a prima facie case of appropriation of likeness are: (1) defendant's use of plaintiff's likeness without permission, (2) defendant gained a commercial benefit or some other advantage from using plaintiff's likeness, (3) plaintiff was harmed and (4) defendant's appropriation was a substantial factor in causing such harm and (5) the privacy interests of plaintiff outweigh the public interest served by defendant's use of the likeness. (CACI No. 1803; *Eastwood v. Superior Court* (1983) 149 Cal.App.3d 409, 417; *Gionfriddo v. Major League Baseball* (2001) 94 Cal.App.4th 400, 409-410.)

To establish a probability of prevailing on this claim, plaintiffs cannot simply rely on their pleadings. (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 735.) They had to produce competent, admissible evidence as to each element of the claim. (*Ibid.*) They failed to do so. They have not presented any evidence to show that Saurman gained a commercial benefit or other advantage by posting Ball's photograph on the Facebook page. Ball speculates in his declaration that Saurman is trying to establish herself as a consumer advocate, but "'speculation is not evidence.'" (*Wise v. DLA Piper (US)* (2013) 220 Cal.App.4th 1180, 1188.)

Plaintiffs also have failed to present any facts or evidence linking the appearance of Ball's image on the Facebook page with a single specific harm or damage to plaintiffs. In the absence of a causal link between the appropriation of the likeness and some identifiable detriment, plaintiffs have not established the

15

probability of prevailing on their claim.  (See *Eastwood v. Superior Court*, *supra*, 149 Cal.App.3d at p. 417.)

(e) *Unfair Business Practices*

The Unfair Practices Act defines "unfair competition" as any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."  (Bus. & Prof. Code, § 17200.)  "[T]he statute is violated where a defendant's act or practice is unlawful, unfair, fraudulent or in violation of [Business and Professions Code] section 17500."  (*South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 878.)  Among other things, the Unfair Practices Act authorizes courts to enjoin unfair business practices. (Bus. & Prof. Code, § 17203; see *Sevidal v. Target Corp.* (2010) 189 Cal.App.4th 905, 923.)  Individuals may institute actions for such relief on behalf of themselves or the general public.  (Bus. & Prof. Code, § 17204.)

The parties agree the seventh cause of action for unfair business practices is derived from plaintiffs' claim for libel per se and seeks to enjoin Saurman from "making the false and misleading statements to the public . . . with the intent to destroy competition."  (See *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 277.) "By proscribing 'any unlawful' business practice, '[Business and Professions Code] section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable. [Citations.]"  (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*. (1999) 20 Cal.4th 163, 180; accord *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 610; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 486.)  Because plaintiffs demonstrated a probability of prevailing on their libel claim, they also made a sufficient showing on their "independently actionable" unfair business practices claim.  (*Cel-Tech Communications*, *supra*, at p. 180.)  Accordingly, the trial court properly denied the motion to strike that cause of action.

16

*C. Plaintiffs' Appeal*

Plaintiffs challenge the trial court's decision to strike the eighth cause of action for fraud/deceit. The elements of fraud are: (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) Conceding that they did not rely upon Saurman's alleged defamatory statements, plaintiffs contend they nonetheless stated a viable fraud claim according to *Randi W.*, *supra*, 14 Cal.4th 1066. We disagree. The facts here are significantly attenuated from those in *Randi W.*

In *Randi W.*, a student who claimed that a school employee sexually assaulted her sued the school district for whom the employee had previously worked. The complaint alleged causes of action for negligence, negligent misrepresentation and fraud based on the school district's recommendation letters for the employee that failed to disclose sexual misconduct charges and complaints made against the employee. (*Randi W.*, *supra*, 14 Cal.4th at pp. 1072-1073.) Overruling a demurrer sustained without leave to amend, the Supreme Court held that "defendants' letters of recommendation, containing unreserved and unconditional praise for [the] former employee . . . despite defendants' alleged knowledge of complaints or charges of his sexual misconduct with students, constituted misleading statements that could form the basis for tort liability for fraud or negligent misrepresentation." (*Id.* at p. 1070.)

*Randi W.* acknowledged that "no California case has yet held that one who intentionally or negligently provides false information to another owes a duty of care to a third person who did not receive the information and who has no special relationship with the provider." (*Randi W.*, *supra*, 14 Cal.4th at p. 1077.) Resolving the threshold question of duty, the court concluded that public policy considerations dictate that "the writer of a letter of recommendation owes to . . . third persons a duty not to misrepresent the facts in describing the qualifications and character of a former employee, if making these misrepresentations would present a substantial,

17

foreseeable risk of physical injury to . . . third persons." (*Id.* at p. 1081.) The court further reasoned that, under these circumstances, the plaintiff need not show actual reliance on the letters; rather, "plaintiff need only allege that her injury resulted from action that the recipient of defendants' misrepresentations took in reliance on them." (*Id.* at p. 1085.)

Here, Saurman did not write a letter of recommendation. Saurman made derogatory comments about Ball and his businesses on Internet sites and in a letter to the HLAA. Plaintiffs do not allege that they were physically harmed by persons who took action in reliance on the comments. Nor do they allege there was a substantial, foreseeable risk of such physical harm. Rather, Ball declares that "[a]s a direct result [of the false statements] Saurman, has caused me extreme humiliation and mental distress which has caused physical distress." Because Ball claims that Saurman's statements "direct[ly]" caused him physical distress, the *Randi W.* exception to the personal reliance requirement does not apply. Moreover, plaintiffs cite no authority suggesting the exception was intended to apply in cases involving primarily economic injury. We conclude the trial court properly granted the special motion to strike the fraud/deceit claim.

### D. Attorney Fees

Where, as here, a defendant achieves mixed success in an anti-SLAPP motion, the defendant is "entitled to recover attorney fees and costs incurred in moving to strike the claims on which [he or she] prevailed, but not fees and costs incurred in moving to strike the remaining claims. The trial court may determine the appropriate amount of fees and costs, upon a proper application by defendants. [Citation.]" (*ComputerX-press, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1020.) In light of our decision, Saurman is the prevailing party on all but three of plaintiffs' causes of action. She therefore is entitled to recover the attorney fees and costs incurred in successfully moving to strike five of the eight claims. (*Ibid.*) The trial court shall consider her request for fees and costs on remand.

18

DISPOSITION

The order denying the anti-SLAPP motion to strike is reversed as to plaintiffs' third cause of action for intentional interference with economic relationship, fourth cause of action for negligent interference with economic relationship, and fifth and sixth causes of action for invasion of privacy. The trial court is directed on remand to enter a new order granting the motion as to those causes of action and, assuming Saurman files a properly substantiated request, to determine the amount of a reasonable attorney fees and costs award. The order granting the motion to strike the eighth cause of action for fraud/deceit and denying the motion to strike the first cause of action for libel per se, second cause of action for negligence and seventh cause of action for unfair business practices are affirmed. Saurman shall recover her costs on appeal.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

19

Roger T. Picquet, Judge

Superior Court County of Ventura

_____


Kendall T. Jones P.A., Kendall T. Jones for Defendant and Appellant.

Lemmon-Land & Law, P.C., Peter D. Lemmon, Law Offices of William G. Short, William G. Short for Plaintiffs and Appellants.